No. 13192

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

———————————

STATE ex rel., JOE R. THELEN and
G. BARBARA THELEN, husband and wife,

Relators,

-vs-

CITY OF MISSOULA, through its City Council,

Respondent.

———————————

ORIGINAL PROCEEDING:

Counsel of Record:

For Relators:

Julio K. Morales argued, Missoula, Montana

For Respondent:

Fred C. Root and Victor F. Valgenti, Missoula, Montana
Victor F. Valgenti argued, Missoula, Montana

For Amicus Curiae:

Thomas Mahan argued, Helena, Montana

———————————

Submitted: October 29, 1975

Decided: DEC - 8 1975

Filed: ꞋꞋ

THOMAS J. FORSYTHE

———————————
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an original proceeding brought by property owners of the city of Missoula praying that an alternative writ of prohibition issue directing the city of Missoula to restrain from further interference in the sale of their residence and in the establishment of a home for the developmentally disabled in a one-family residential zone.

Relators are residents of the city of Missoula and owners under a contract for deed of a residence in that city. The property is located in a zone classified by the city as R-I, one-family residential district. The zoning classification, as set forth in section 32.93 of the code of the city of Missoula, allows uses of the premises as follows: "Any use permitted in RR-I". Such uses are set out in section 32-9.8 of the code of the city of Misscula as:

(a) One-family dwelling.

(b) Parks and Playgrounds.

The applicable definition of "family" is contained in section 32-2 of the code of the city of Missoula, and provides:

> "One or more persons related by blood, adoption, or marriage, exclusive of household servants, living and cooking together as a single housekeeping unit, or not more than two persons though not related by blood, adoption or marriage, living and cooking together as a single housekeeping unit shall be deemed to constitute a family."

Relators desire to sell their residence and received an offer from the Missoula Developmentally Disabled Community Homes Council, a nonprofit organization, which intends to use the home for not more than 8 developmentally disabled persons. Because the property was located in an R-I area, the matter was taken before the Missoula city council to see what action it would take in view of the fact that the Montana legislature in 1974 amended Title 11,

- 2 -

Cities and Towns, Chapter 27, Building Regulations-Zoning Commission sections providing for community residential facilities. Sections 11-2702.1 and 11-2702.2, R.C.M. 1947, now exempt homes for the developmentally disabled from the provisions of local zoning ordinances. They provide:

"11-2702.1. <u>Community residential facility--defined.</u> 'Community residential facility' means (1) a group, foster, or other home specifically provided as a place of residence for developmentally disabled or handicapped persons who do not require nursing care, or (2) a district youth guidance home established pursuant to section 10-1103, or (3) a halfway house operated in accordance with regulations of the department of health and environmental sciences for the rehabilitation of alcoholics or drug dependent persons."

"11-2702.2. <u>Foster, boarding homes, community residential facilities considered residential.</u> A foster or boarding home operated under the provision of sections 10-520 through 10-523, or community residential facility serving eight (8) or fewer persons, is considered a residential use of property for purposes of zoning if the home provides care on a twenty-four (24) hour a day basis.

"The homes are a permitted use in all residential zones, including, but not limited to, residential zones for single-family dwellings. Nothing in this paragraph shall be construed to prohibit a city or county from requiring a conditional use permit in order to maintain a home pursuant to the provisions of this paragraph; provided such home is licensed by the department of health and environmental sciences and the department of social and rehabilitation services. Any safety or sanitary regulation of the department or any other agency of the state or political subdivision thereof which is not applicable to residential occupancies in general may not be applied to a community residential facility serving eight (8) or fewer persons."

Hearings were held before a special committee of the city council and the council. Both proponents and opponents for allowing the sale to the nonprofit group were represented. The final action by the city council directed the city attorney to file an action testing the amendments to the state zoning law exempting homes for the developmentally disabled. The consensus of the city council was that while it did not oppose laudable objectives of the legislation, the purpose of the law suit was to challenge the state's taking over city zoning; zoning under the law theretofore had been a locally controlled function that should be left at the local level.

Thereafter the city of Missoula filed an action against relators entitled: City of Missoula vs. Joe R. Thelen and Barbara G. Thelen, his wife, and Susan K. Browder, seeking an order to permanently enjoin and prohibit relators, their successors and assigns, from residence use of said premises by more than one family. In addition, the city filed a lis pendens notice preventing the consummation of the sale by relators, as well as preventing the future use of the home as a group home for the developmentally disabled.

Three issues are pertinent in this proceeding:

1. Are relators entitled to have this Court assume original jurisdiction in this cause?

2. Are relators exempt from the city zoning power, classification and definition of a one-family residence district?

3. Are sections 11-2702.2, 71-2001, 71-2004, 71-2401 through 71-2414, and 80-2607 through 80-2610, R.C.M. 1947, relating to establishment, operation and appropriation for group home facilities constitutional within the purview of the United States Constitution and the 1972 Montana Constitution?

For the purposes of this opinion we will combine the first two issues. Relators argue that recourse to the district court and subsequent appellate channels will not afford them adequate relief in that the final disposition of the issue presented by their petition affects the validity of the buy-sell agreement entered into between relators and the Missoula Developmentally Disabled Community Homes Council; that the city has repeatedly stated it intended to bring the issue to this Court to establish judicial precedent; and that reaching a supreme court decision through appellate channels will unreasonably delay the sale of the residence, the construction of a new residence planned by relators with proceeds of the sale, and the eventual use of the residence as a group residence within the statutes of this state.

- 4 -

Respondent city argues that relators are attempting to short circuit the district court process and this Court is asked to act in a vacuum, alleging that relators who now claim urgency, have made no effort to bring the matter to trial in the district court and have thereby denied this Court a factual determination that could be properly disposed of by this Court on appeal. Respondent cites and relies on this Court's holding in State ex rel. Kober & Kyriss v. District Court, 147 Mont. 116, 117, 410 P.2d 945, where this Court held:

> "In view of the provisions of the Montana Rules of Appellate Civil Procedure for the expeditious handling of appeals we are not inclined to issue writs of supervisory control as a method of short cut appeal, except under the most extenuating circumstances which we need not attempt to catalog. In this cause no such circumstances appear."

Looking to the quoted language, we ask what, if any, are the extenuating circumstances here that would warrant intervention of this Court at this time? First, relators, with their buy-sell agreement, are unable to sell their property due to the law suit filed by respondent city and the lis pendens notice. Second, a zoning regulation of respondent city that has been neutralized by an act of the legislature. Third, the provisions of Article XII, Section 3(3), 1972 Montana Constitution which provides:

> "The legislature shall provide such economic assistance and social and rehabilitative services as may be necessary for those inhabitants who, by reason of age, infirmities, or misfortune may have need for the aid of society."

We find such extenuating circumstances warrant this Court's intervention in this cause.

While we recognize respondent city's arguments as to the desirability of maintaining local government control of zoning regulations in its city, there is no question that the power of the legislature over the city in this matter is supreme. The legislature can give the cities of this state the power to regulate through zoning commissions, and the legislature can take it away.

Respondent's remedy lies not in this Court, but in the legislature. This Court in State v. Holmes, 100 Mont. 256, 274, 47 P.2d 624, said:

> "* * * The powers granted to a municipal corporation are of two classes. 'The first including those which are legislative, public or governmental, and import sovereignty; the second are those which are proprietary or quasi private, conferred, for the private advantage of the inhabitants and of the City itself as a legal person.' [Citing cases] * * *
>
> "As to the first class of powers of a city enumerated above, the power of the legislature is supreme except as limited by express constitutional prohibitions * * *."

This Court in State ex rel. Griffin v. City of Butte, 151 Mont. 546, 548, 445 P.2d 739, quoting from Leischner v. Knight, (City of Billings), 135 Mont. 109, 112, 337 P.2d 359, said:

> "'It is well-settled law in this state that cities have only those powers granted them by statute or which are necessarily implied as adjuncts to powers granted by statute. This court has repeatedly stated that "unless a power is vested in the municipality by express law [or by necessary implication therefrom], the presumption is against the exercise by the city of any such power." State ex rel. Great Falls Housing Authority v. City of Great Falls, 110 Mont. 318, 328, 100 P.2d 915, 921.'"

In the instant case, while respondent city may well have acted within the power granted it by the legislature in adopting its "one-family" criteria for zoning, that power was modified by later legislative language and respondent city should have revised its zoning regulations to meet the legislative requirements.

That the legislature has power to modify or withdraw various powers given a municipality has long been recognized in Montana. This Court noted in Stephens v. City of Great Falls, 119 Mont. 368, 371, 175 P.2d 408:

> "There is no principle of law better established than that a city has no power, except such as is conferred upon it by legislative grant, either directly or by necessary implication. [Citations] Resting as it does upon legislative grants the legislative branch of the government may, at its pleasure, modify or withdraw the power so granted. 'It may, if it chooses, repeal any charter, or any law under which municipalities may be created, and destroy any municipal corporation at its will and pleasure.' [Citation]."

- 6 -

Montana's legislature having determined that the constitutional rights of the developmentally disabled to live and develop within our community structure as a family unit, rather than that they be segregated in isolated institutions, is paramount to the zoning regulations of any city it becomes our duty to recognize and implement such legislative action.

Respondent city argues that a recent opinion of the United States Supreme Court, Village of Belle Terre v. Boraas, 416 U.S. 1, 94 S.Ct. 1536, 39 L ed 2d 797, 804, affirms the constitutionality of an ordinance defining "family" which is for all practical purposes identical to the provisions of section 32-2 of the Missoula city code defining "family".

We do not so view it. Village of Belle Terre is an entirely different factual situation and is unrelated to state legislation that is focused on the carrying out of new constitutional mandates. There, the city of Belle Terre had an ordinance similar to Missoula's restricting land use to one-family dwellings and prohibiting the occupancy of a dwelling by more than two unrelated persons as a "family". Plaintiffs in that case, the owners of a house, were charged with violating the ordinance due to the fact that three of six college students rented the house. Plaintiffs argued that the ordinance violated equal protection rights and rights of association, travel and privacy. The district court upheld the constitutionality of the ordinance, the circuit court reversed, and the United States Supreme Court in an opinion authored by Mr. Justice Douglas, reversed the circuit court.

Mr. Justice Douglas gave as the Court's reasons for finding the ordinance constitutional the fact that the ordinance (a) was not aimed at transients and thus did not violate any right of interstate travel, (b) involved no procedural disparity inflicted on some but not on others, (c) involved no fundamental constitutional right, such as the right of association and privacy, and (d) was reasonable

and bore a rational relationship to a permissible state objective, thus not violative of equal protection. Viewing our fact situation in the instant case, we find the Village of Belle Terre case inapplicable particularly in the criteria of the opinion set forth under (c).

Here, the Montana legislature adopted a new policy as applied to the developmentally disabled in an effort to implement a new constitutional mandate, and in so doing it was furthering a permissible state objective. Mr. Justice Douglas noted in Village of Belle Terre that every line drawn by a legislature leaves something out that might well have been included, but notes, however, that that exercise of discretion is a legislative, not a judicial, function. Justice Douglas then quotes the language of Mr. Justice Holmes in his dissenting opinion in Louisville Gas Co. v. Coleman, 277 U.S. 32, 41, 48 S.Ct. 423, 72 L ed 770:

> "'When a legislative distinction is determined, as no one doubts that it may be, between night and day, childhood and maturity, or any other extremes, a point has to be fixed or a line has to be drawn, or gradually picked out by successive decisions, to mark where the change takes place. Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the legislature must be accepted unless we can say that it is very wide of any reasonable mark.'"

Under the facts of the instant case, we uphold the legislative acts providing for community residential facilities for developmentally disabled in all residential zones, including, but not limited to, residential zones for one-family dwellings.

Let the writ issue. Attorney fees are set in the amount of $2,000.00.

John Conway Harrison
Justice.

- 8 -

We Concur:

_James T Harrison_
Chief Justice

_Gene B Daly_

_Wesley Castles_

Justices.