**EARTH RESOURCES COMPANY OF ALASKA, Complainant,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

Alaskan Northwest Natural Gas Transportation Company Foothills Pipe Lines (YUKON) Limited, Intervenors.

**STATE OF ALASKA, North Slope Borough, Fairbanks North Star Borough, and Kenai Peninsula Borough, Complainants,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

Alaskan Northwest Natural Gas Transportation Company Foothills Pipe Lines (YUKON) Limited, Intervenors.

Nos. 79–2191, 79–2193.

United States Court of Appeals, District of Columbia Circuit.

Argued 3 Dec. 1979.

Decided 3 Jan. 1980.

Robert H. Loeffler, Washington, D. C., with whom Alan C. Johnston and Cathy R. Silak, San Francisco, Cal., were on the brief, for complainants in No. 79–2193.

Jacob P. Billig, Baltimore, Md., and Marc J. Fink, Washington, D. C., were on the brief for complainant in No. 79–2191.

Kristina Nygaard, Washington, D. C., Attorney, Federal Energy Regulatory Commission, for respondent.

Rush Moody, Jr., Washington, D. C., with whom William J. Grealis, Washington, D. C., was on the brief, for intervenor Alaskan Northwest Gas Transportation Company in Nos. 79–2191 and 79–2193.

George W. McHenry, Jr., Washington, D. C., with whom John H. Burnes, Jr., Washington, D. C., was on the brief, for intervenor Foothills Pipe Lines (YUKON) Limited in Nos. 79–2191 and 79–2193.

Before: ROBB, WILKEY and MIKVA, Circuit Judges.

Opinion for the Court filed by WILKEY, Circuit Judge.

**1.** 15 U.S.C. § 719 (1976).

**2.** *See* Executive Office of the President, Decision and Report to Congress on the Alaska Natural Gas Transportation System (1977).

WILKEY, Circuit Judge:

Complainants the State of Alaska and Earth Resources Company of Alaska challenge a Federal Energy Regulatory Commission (FERC) order setting design specifications and initial capacity for the Alaska segment of the Alaska National Gas Transportation System. This system comprises an overland pipeline through Canada to transport natural gas from the Alaska North Slope to the lower forty-eight states. To expedite the approval and construction of the pipeline system Congress established a special procedural framework in the Alaska Natural Gas Transportation Act (ANGTA).[1] Under the ANGTA courts possess only limited jurisdiction to review FERC orders concerning the pipeline system. We find that complainants do not state any claims properly within our limited jurisdiction. We therefore dismiss the petition.

## I. FACTS

In September 1977, in accordance with procedures established by the ANGTA, the President approved a proposal for the nature and route of the Alaska Natural Gas Transportation System.[2] The President's decision, subsequently ratified by Congress,[3] left many specifics of the system open for later final decision by FERC and other agencies. Following the President's decision, FERC granted a conditional certificate of public convenience and necessity for the construction of the Alaskan segment of the system. On 2 March 1979 Alaskan Northwest Natural Gas Transportation Company applied to FERC for a final order approving design specifications for a forty-eight inch diameter pipeline with 1260 psig (pounds per square inch gauge) maximum working pressure. Alaskan Northwest, an intervenor in this case, is the successor to the company designated by the President's 1977 decision to construct and operate the Alaskan segment of the pipeline system.

**3.** As required by ANGTA, Congress approved the President's decision by joint resolution. Pub.L.No. 95–158, 91 Stat. 1268 (1977).

The FERC gave public notice of Alaskan Northwest's application and invited comments. Two months later the Commission gave notice of a staff report on issues related to the application,[4] and invited comments on the report. Complainants filed comments but did not request a hearing, and none was held. On 6 August 1979 the Commission issued an order approving Alaskan Northwest's proposed pipeline diameter and pressure. After unsuccessfully petitioning FERC to vacate the order and to rehear the case, complainants appealed to this court to set aside the Commission's order.

## II. ANALYSIS

Our analysis in this case must follow the unique procedures that Congress established in the ANGTA to expedite construction of the Alaska natural gas pipeline. In an earlier decision of this court we described the passage of the ANGTA, the decision by the President subsequently ratified by Congress, and the procedural framework for agency action and judicial review under the ANGTA.[5] We limit our exposition here to those factors essential to resolve the issues now before us.

### A.

■ The ANGTA prevents us from reviewing agency decisions on the pipeline system for reasonableness or substantial support on the record. We are strictly limited to reviewing claims of denial of constitutional rights, or action in excess of statutory jurisdiction, authority, or limitations, or action short of statutory right.[6] In *Midwestern Gas Transmission Company v.*

*FERC*[7] we acknowledged and followed these strict limitations on judicial review, limitations which were emphasized in the Congress's very statement of purpose of the ANGTA.[8]

In the present case there can be no doubt that the Commission had statutory jurisdiction and authority to approve specifications of pipeline diameter and pressure. The Natural Gas Act authorizes the Commission to issue certificates for the transportation of natural gas,[9] and the ANGTA specifically authorizes it to certify the Alaska pipeline system.[10] We can review the Commission's order, then, only if petitioners state a claim of denial of constitutional rights or a claim that the Commission's actions exceeded specific statutory limitations.

### B.

■ Complainants claim that the Commission violated due process by deciding the pressure issue in isolation from decisions on such related issues as carbon dioxide content and conditioning plant design. By foreclosing options on these related issues, complainants contend, the Commission's piecemeal decision on the pressure issue has rendered any future hearing on the related issues meaningless, thus denying due process rights regarding those issues.

In order to invoke the due process guarantee of a hearing, one must show that a government action infringes upon a liberty or property interest.[11] Further, when the complaint concerns administrative action, due process hearing requirements apply only to adjudicatory proceedings, which concern particular effects on an individual

---

4. This was a report of the "Alaska Delegate," an agent of FERC appointed to gather information relevant to future FERC decisions on permanent certification applications for the pipeline system.

5. *See Midwestern Gas Transmission Co. v. FERC*, 191 U.S.App.D.C. 80, 86–88, 589 F.2d 603, 609–11 (D.C.Cir.1978).

6. *See* 15 U.S.C. § 719h(b)(2) (1976); H.R. Rep.No. 1658, 94th Cong., 2d Sess. 31 (1976), U.S.Code Cong. & Admin.News 1976, p. 6643.

7. 191 U.S.App.D.C. 80, 103, 589 F.2d 603, 626 (D.C.Cir.1978).

8. 15 U.S.C. § 719a (1976).

9. *See id.* § 717f.

10. *See id.* § 719c.

11. *See, e. g., Goss v. Lopez*, 419 U.S. 565, 572–73, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Arnett v. Kennedy*, 416 U.S. 134, 154–55, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

or a small group of persons.[12] Complainants have met neither prerequisite. Complainants really do not assert any *damage* here from the FERC action, neither to the environment, nor to existing property interests, nor to any liberty interest. The most complainants have been able to point to is a possible impairment of the concept of Alaskan development which complainants—but not necessarily everyone—favor. The State of Alaska's desire to develop a petrochemical industry, which it says will be frustrated by the Commission's order, is far removed from the sort of legitimate claim to entitlement necessary to demonstrate a liberty or property interest.[13] Moreover, to put the matter in broader perspective, the Commission's decision on the pressure issue is a prospective, legislative resolution of a general policy issue, by rulemaking, which in contrast to an adjudication does not give rise to the usual due process rights associated with a hearing.[14] Therefore complainants have not stated a valid due process objection to the Commission's actions.[15]

Complainants' contention of "piecemeal adjudication" does not actually state a due process claim, but rather an attack on the Commission's choice to structure its proceedings on an issue-by-issue basis. The Supreme Court has affirmed in the clearest terms that agencies have broad discretion to fashion their own procedures.[16] Since complainants' argument constitutes an attack on the reasonableness of the Commission's exercise of its discretion, we have no jurisdiction under ANGTA to review.

## C.

Complainants raise a further argument that the Commission has exceeded certain statutory limitations on its actions. First, they observe that the Commission has not acted within the normal framework for certificate applications under section 7(c) of the Natural Gas Act.[17] Complainants state that Alaskan Northwest did not apply for a certificate, but only for an order on particular issues; that the FERC did not require the usual detailed supporting exhibits; and that the FERC did not fully consider all factors bearing on public necessity and convenience. These objections fly in the face of the ANGTA. The Act authorizes the Commission to issue a certificate for the pipeline system "forthwith" following the President's decision;[18] the manner in which the FERC structures its proceedings toward the end of a final certificate, as we have discussed, is within the Commission's discretion and beyond our jurisdiction to review. Whether the FERC has fully considered factors and alternatives bearing on public necessity and convenience, is an issue going to reasonableness and the substantiality of support for the order; this type of issue ANGTA expressly forecloses from our consideration. For the same reason, we cannot review complainants' claim that the Commission improperly accorded a presumption to the 1260 psig pressure level based on the President's decision. While issues of reasonableness and substantial record support

---

**12.** *See United States v. Florida East Coast Ry.*, 410 U.S. 224, 242–45, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973); *Morgan v. United States*, 304 U.S. 1, 18–19, 58 S.Ct. 999, 82 L.Ed. 1129 (1938); *Bi-Metallic Investment Co. v. State Board of Equalization*, 239 U.S. 441, 446, 36 S.Ct. 141, 60 L.Ed. 372 (1915).

**13.** *See, e. g., Goss v. Lopez*, 419 U.S. at 573, 95 S.Ct. 729.

**14.** *See United States v. Florida East Coast Ry.*, 410 U.S. at 245, 93 S.Ct. 810; *Rainbow Valley Citrus Corp. v. Federal Crop Ins. Corp.*, 506 F.2d 467, 469 (9th Cir. 1974).

**15.** Complainants' reliance on *Ashbacker Radio Corp. v. FCC*, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945), to claim a right to simulta-

neous resolution of related issues, is entirely misplaced. That case is based on a statutory, not a constitutional hearing right, and requires consolidation of mutually exclusive applications for a license or certificate; here we have no competing applications, but only a claim of mutually exclusive issues concerning one application.

**16.** *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 524–25, 543, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978).

**17.** 15 U.S.C. § 717f(c) (1976).

**18.** *Id.* § 719c(a)(2).

may sometimes shade over into issues of extent of statutory authority, this is not the case here; the statutory preclusion of our review on these issues is crystal clear.

### D.

■ As another statutory limitation to FERC's action in this case, complainants invoke section 382(b) of the Energy Policy and Conservation Act of 1975 (EPCA),[19] which requires the FERC and other agencies to include in any major regulatory action a statement of the probable impact on energy efficiency and conservation. The Commission included no such statement in its order. The EPCA requires a statement, however, only where practicable and consistent with the exercise of the Commission's authority under law. We believe the Commission could quite reasonably conclude that the delay of preparing an energy statement was inconsistent with the ANGTA mandate for expedition, and specifically with the provision that the Commission issue a certificate "forthwith."[20] While we would normally require an agency to express a rationale for such a decision, the ANGTA forecloses review on this procedural ground: we are restricted to deciding whether the EPCA by necessity imposes a statutory limitation on FERC in this case, and we hold that it does not.

The Supreme Court has held that a statutory time limit on agency action can excuse an agency from the time-consuming process of preparing an environmental impact statement, on grounds that compliance is required "to the fullest extent possible."[21] The EPCA leaves even greater room for accommodating statutory requirements for expedition: the agency need only show impracticability, not impossibility. Though an energy statement is considerably less elaborate than an environmental one,[22] and thus

seldom "impossible" to prepare within limited time constraints, the time constraints and the massive complexity of FERC's undertaking here clearly permit the Commission to find an energy statement "impracticable" in light of the statutory requirements of ANGTA. We therefore do not proceed to consider the further questions under the EPCA, whether this order is a major regulatory action, and whether FERC's actions constitute compliance with the EPCA.

### E.

■ Finally, we must decide whether FERC was required to prepare an environmental impact statement (EIS) on the subjects of this order, in accordance with the National Environmental Policy Act (NEPA).[23] The Commission prepared a draft EIS on the proposed conditioning facility at the North Slope terminus of the pipeline, but prepared no EIS on the pipeline pressure and capacity issues.

Concerning NEPA issues, Congress set forth in the ANGTA specific and far-reaching restrictions on judicial review of decisions related to the pipeline system. The ANGTA provides that congressional ratification of the President's pipeline system decision "shall be conclusive as to the legal and factual sufficiency of the environmental impact statements submitted by the President relative to the approved transportation system."[24] This provision goes on to state that no court has jurisdiction to consider the sufficiency of such statements under NEPA. The effect of this section is to place review in the Congress instead of the courts. By ratifying the President's 1977 decision, Congress has approved the EIS's for the pipeline system.

There is one possible ambiguity in this preclusion of judicial review. The language

---

19. 42 U.S.C. § 6362(b) (1976).

20. *See* 15 U.S.C. § 719c(a)(2) (1976).

21. 42 U.S.C. § 4332 (1976); *see Flint Ridge Dev. Co. v. Scenic Rivers Ass'n*, 426 U.S. 776, 787–90, 96 S.Ct. 2430, 49 L.Ed.2d 205 (1976).

22. *See Delta Air Lines, Inc. v. CAB*, 182 U.S. App.D.C. 295, 306–07, 561 F.2d 293, 304–05 (D.C.Cir.1977), *cert. denied*, 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 796 (1978).

23. *See* 42 U.S.C. § 4332 (1976).

24. 15 U.S.C. § 719h(c)(3) (1976).

quoted above can perhaps be interpreted as approving the EIS's only as regards those pipeline issues specifically evaluated in an EIS, not as regards all issues relative to the pipeline system. Complainants urge this interpretation upon the court, and argue that the pipeline pressure issue was not evaluated in the EIS's that the President submitted at the time of his 1977 decision. In support of this position petitioners point to an interpretation from the Council on Environmental Quality, requiring additional NEPA studies on particular issues concerning the pipeline.[25]

Any ambiguity in this section of the ANGTA, however, is eliminated by the Act's statement of purpose: "it is the intent of the Congress to exercise its constitutional powers to the fullest extent . . . particularly with respect to the limitation of judicial review of actions of Federal officers or agencies taken pursuant thereto." [26] This language requires us to follow the broader interpretation of the preclusion of judicial review. We therefore lack jurisdiction to review NEPA compliance for any issues "relative to" the pipeline issue.[27] Pipeline pressure and capacity are of course integrally related to the system. And there can be no doubt that in restricting review here, Congress has acted within constitutional limits, since NEPA requirements are a creature of Congress in the first place. We therefore decline to review the question of whether the FERC's actions in this case were sufficient to satisfy NEPA requirements.

Complainants raise one further point in an attempt to avoid the force of ANGTA's preclusion of judicial review of NEPA questions. Both sides agree that as a result of the Commission's pipeline pressure decision, the conditioning plant for natural gas entering the system will need to be located at Prudhoe Bay on the Alaska North Slope. An alternative pressure might have allowed a different plant location. In effect, complainants claim, the FERC has now decided the issue of conditioning plant location without preparing a final EIS. Since the conditioning plant is outside the scope of the pipeline system approved in the President's decision, complainants argue, the ANGTA's limited review provisions do not apply.

The problem with this theory is that the issue of conditioning plant location was not a subject of the application and order here in question, and FERC has not taken any major federal action on the conditioning plant; rather it has taken an entirely different action which happens to affect future consideration of the conditioning plant issue.[28] In essence, complainants allege that FERC failed to give adequate consideration to the effects of its pipeline pressure decision on the location and environmental aspects of the conditioning plant facilities. In other words, the actual decision that complainants claim is in violation of NEPA is the pipeline pressure decision, which is shielded from judicial review by the ANGTA, as regards the adequacy of EIS's. We therefore lack jurisdiction to review these complaints under NEPA.

### III. CONCLUSION

This case reflects exactly the sort of time-consuming challenge that Congress designed ANGTA to prevent during the approval and construction of the Alaska natural gas pipeline. The order challenged here is nothing but a routine step in the process of issuing a certificate for construction of the pipeline. It is clearly within the Commission's statutory authority and offers no basis for a challenge on due process grounds. The statutory provisions of

**25.** *See* CEQ, Report to the President on Environmental Impacts of Proposed Alaska Gas Transportation Corridors 14 (1977).

**26.** 15 U.S.C. § 719a (1976).

**27.** *Id.* § 719h(c)(3).

**28.** It is not resolved whether the FERC has jurisdiction over the conditioning plant, and we do not decide whether it does. The Commission prepared a draft EIS on conditioning plant facilities, but stated that the facilities would not normally require a Commission certificate. *See* FERC, Prudhoe Bay Project Draft Environmental Impact Statement (1979).

NEPA, which would otherwise limit FERC action, have already been removed from our consideration. In order to accept jurisdiction and step in to overturn this action of the Commission, we would have to ignore the ANGTA in precisely the type of situation where it most compellingly applies. This would produce exactly the result that Congress tried to prevent.

For instance, to require a separate EIS for the pipeline pressure issue would delay eventual construction by months and perhaps years. The interrelationship between issues, which is the foundation of complainants' argument, could make the delay even longer. Decisions on various design features of the pipeline must be made sequentially; e. g., final design of the pipeline must await approval of operating pressure, and financing arrangements are influenced by design specifics and their cost. Thus a delay in deciding on pipeline pressure can have ripple effects that upset planning certainty for financing purposes.[29]

Such concerns underlie the Commission's decision to proceed with separate issues and Congress's decision to shield the decisionmaking process from judicial review when constitutionally permissible. Even with the ANGTA provision to expedite pipeline construction, it has already taken the Commission two years since the President's decision just to approve a pressure level for the pipeline. Final certificates and commencement of construction are still further in the future. In this light, if there is any shortcoming in the Commission proceedings, it is certainly not in a lack of deliberation or in denial of time and opportunity for interested parties to express their views.

Of course the questions before us in this case are quite narrow. But these broader considerations of congressional intent to expedite do drive home the importance of taking ANGTA's judicial review provisions seriously. We may not strain for a statutory interpretation that will circumvent con-

gressional intent by allowing delay to result from a complaint that goes only to the reasonableness and record support of FERC decisions. In this case complainants have not pointed to any Commission action or omission of the type Congress intended us to review. The complaint is therefore

*Dismissed.*

---

**29.** An increase in the approved pressure level can cause even greater delay. The Canadian National Energy Board rejected pressure levels above 1260 psig partly because the engineering studies and burst testing necessary to ensure the reliability of such new technology could delay the project by up to two years. *See* Joint Appendix at 87.