79-101

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

THE STATE OF MONTANA ex rel.,
REGION II CHILD AND FAMILY
SERVICES, INC., and STATE OF
MONTANA, et al.,

               Relators,

     vs.

THE DISTRICT COURT OF THE EIGHTH
JUDICIAL DISTRICT et al.,

               Respondents.

---

ORIGINAL PROCEEDING:

Counsel of Record:

    For Relators:

        Richard Ganulin and William Hutchison, Montana Legal
         Services, Great Falls, Montana

        Catherine Swift, S.R.S., Helena, Montana

    For Respondents:

        Jardine, Stephenson, Blewett and Weaver, Great Falls,
        Montana

    For Amicus Curiae:

        James Reynolds, Helena, Montana

---

Submitted: January 25, 1980

Decided: JAN 28 1980

Filed: JAN 28 1980

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This petition was filed seeking a writ of supervisory control and other appropriate relief in a cause where the District Court had issued an injunction pendente lite enjoin  the relators from establishing a community residential home for developmentally disabled children.  The District Court held that the community home violated restrictive covenants limiting the use of the property to single family dwellings.

This  Court on December 20, 1979 ordered the parties to the cause to file briefs within twenty days, together with supporting memoranda,  and stayed further proceedings pending the receipt of said briefs and memoranda.  In addition, permission was granted for an amicus brief by the Developmental Disabilities/Montana Advocacy Program.  All parties having filed briefs within the time specified, this Court accepts jurisdiction of the cause and considers the issues raised on briefs without oral argument.

The relator, Region II, purchased a home in the Sunrise Homes Subdivision of Great Falls, Montana.  It was relator's intention to use the home as a residence for five developmentally disabled children.  The children were selected for placement in this home on the basis of their immediate need for a less restrictive environment, current inappropriate placement, and developmental retardation due to their current placement.  Their individual circumstances were set forth in the application for the writ.

The children were to reside in the home with fulltime, paid houseparents and would be taught various personal hygiene and domestic skills in the home.  The children were

also to attend the Great Falls public schools in the day-time.

The landowners who are respondents herein objected both to the use of the home as a group home for the developmentally disabled and to a group of unrelated individuals residing in one house in the Subdivision. Their objections were premised on the Subdivision's protective covenants.

In their petition, the relators noted that they had already incurred substantial costs in purchasing the property and paying for its upkeep and monthly financing. Relators also alleged that they stand to lose income and grants which are dependent upon the immediate use of the home as a group home.

Relators noted that the injunction not only has prevented Region II's use of a home and the movement of five children to the home, but it has also prevented the movement of children in a more restrictive environment, such as Boulder River School, into the community placement which would be vacated by movement of the five children into the Subdivision group home.

Respondent landowners have neither alleged nor testified as to any specific damages that they might suffer if the home were used as a group home. They rely entirely upon the protective covenants of their deeds that state that the homes in the area shall be composed of "one unit single family dwellings."

We find that the District Court improperly issued an injunction pendente lite on the basis of Montana's Constitution, statutes, and caselaw.

Montana's 1972 Constitution provides: "The legislature shall provide such economic assistance and social and re-

habilitative services as may be necessary for those inhabitants who, by reason of age, infirmities, or misfortune, may have a need for the aid of society." Article XII, section 3(3).

Pursuant to this constitutional mandate, the Montana Legislature passed legislation implementing care for the needs of its developmentally disabled citizens at a community level rather than in institutions. Section 53-20-301, MCA provides:

> "PURPOSE. The legislature, in recognition of the widespread and various needs of developmentally disabled persons and of the desirability of meeting these needs on the community level to the fullest extent possible and in order to reduce the need for care in existing state institutions, establishes by this part a community developmentally disabled home program to provide facilities and services for training and treatment of the developmentally disabled in family-oriented residences and establishes a program to provide such homes through the local nonprofit corporations."

To insure the residential nature of the facility, and to protect the residential nature of the neighborhood, the legislature in section 53-20-302, MCA limited the size of the community homes." That section provides:

> "Definition of community home -- limitation on number of residents. A community home for the developmentally disabled is a family-oriented residence or home designed to provide facilities for two to eight developmentally disabled persons, established as an alternative to existing state institutions. The number of developmentally disabled persons may not exceed eight in such a community home, except that the department of social and rehabilitation services may grant written approval for more than eight but not more than twelve persons." Section 53-20-302, MCA.

Anticipating local opposition to the implementation of these statutes, the legislature amended Montana's laws relating to zoning by mandating that all community homes be permitted use in residential neighborhoods, including neighborhoods

-4-

zoned for single family residences. Sections 76-2-313, 76-2-314, MCA. It should be noted that subsection 2 of 76-2-314 states: "The homes are a permitted use in all residential zones, including but not limited to residential zones for single-family dwellings."

This Court in State ex rel. Thelen v. Missoula (1975), 168 Mont. 375, 543 P.2d 173 interpreted the above-cited sections to permit the operation of conforming group homes in residential areas in Montana. There we noted:

> "Montana's legislature having determined that the constitutional rights of the developmentally disabled to live and develop within our community structure as a family unit, rather than that they be segregated in isolated institutions, is paramount to the zoning regulations of any city it becomes our duty to recognize and implement such legislative action.
>
> ". . .
>
> ". . .the Montana legislature adopted a new policy as applied to the developmentally disabled in an effort to implement a new constitutional mandate, and in so doing it was furthering a permissible state objective." Thelen, supra, 168 Mont. 382-383, 543 P.2d at 177-178.

Thelen dealt with zoning restrictions rather than with restrictive covenants. We recognize that there is authority for the statement that zoning ordinances cannot destroy, impair, abrogate or enlarge the force and effect of an existing restrictive covenant. 82 Am.Jur.2d Zoning and Planning § 4 (1976). It could be argued here that the force of the constitutional rights of developmentally disabled persons to live in a community environment, and the strong legislative policy supporting the same (see the statement of purpose in the legislation authorizing community level homes, section 53-20-301, MCA), would overcome a conflicting restrictive covenant in a case like this. It is not necessary, however,

for us to consider such an argument, because here we find a use entirely compatible with and in conformity with the spirit, intent and language of the restrictive covenant.

Moreover, restrictive covenants are to be strictly construed; ambiguities therein are to be construed to allow free use of the property. Courts should not construe the intent of the restrictive covenant when adopted so broadly as to cover the desires of owners confronted with situations developing thereafter. Higdem v. Whitham (1975), 167 Mont. 201, 209, 536 P.2d 1185, 1190.

Here the group home, by law, is structured as a single housekeeping unit, and to all outside appearances is a usual, stable and permanent family unit. City of White Plains v. Ferraioli (1974), 313 N.E.2d 756, 758, 357 N.Y.S.2d 449, 452. Nothing in the language of the restrictive covenant here requires a construction that the "family" should be a biologically single unit. Accordingly, we hold the use allowed here is one within the ambit and intent of the restrictive covenant.

IT IS THEREFORE ORDERED that the injunction pendente lite issued by the District Court in this cause be quashed and that the complaint filed in the matter entitled Fishbough, et al. v. Region II Child Family Services, et al., no. BVD-79-944, filed October 31, 1979, in the District Court of the Eighth Judicial District be dismissed on the basis of constitutional, statutory and case authority of this State.

John Conway Harrison
Justice

-6-

We concur:

_Frank I. Haswell_
Chief Justice

_Gene B Daly_

_Daniel J. Shea_

_John C. Sheehy_ X
Justices