NORTHERN BORDER PIPELINE COMPANY, Plaintiff,

v.

JACKSON COUNTY, MINNESOTA, Ralph Bonnell, Milford Gentz, Walter Olson, Norman Pohlman, and Edward Yonker, Defendants.

Civ. No. 3–81–165.

United States District Court, D. Minnesota, Third Division.

May 1, 1981.

Elmer B. Trousdale, Edward M. Laine and Dennis J. Trooien, Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Minn., for plaintiff.

John M. Lundblad, Jackson County Atty., Jackson, Minn., for defendants.

## MEMORANDUM & ORDER

DEVITT, Senior District Judge.

This case concerns a suit seeking to enjoin the enforcement of a conditional use permit issued by a western Minnesota county. Plaintiff is a pipeline company which has been granted a certificate of public convenience and necessity for the construction of a portion of the eastern leg of the Alaska Natural Gas Transportation System. Defendant is a county in western Minnesota through which the pipeline will pass. The Board of Commissioners of defendant Jackson County, exercising its zoning powers, granted plaintiff a permit for the construction of the gas line but imposed, as a condition on the permit, that the gas line be buried a minimum of six feet.

This action is now before the court on plaintiff's motion for preliminary injunction or in the alternative for partial summary judgment enjoining the enforcement of the six foot cover requirement. The parties agreed on the record that plaintiff is constructing an interstate natural gas pipeline subject to the provisions of the Natural Gas Pipeline Safety Act and that defendant, through the exercise of its zoning authority, is seeking to regulate cover requirements for that line.

Plaintiff's motion for partial summary judgment is GRANTED; defendants are permanently ENJOINED from enforcing the six foot cover requirement.

The Alaska Natural Gas Transportation System was established under the Alaska Natural Gas Transportation Act, 15 U.S.C. § 719 (1976); the system will extend from Prudoe Bay, Alaska, overland into the United States and was designed to deliver the approximately 20 trillion cubic feet of Alaskan natural gas to consumers in the United States. Plaintiff was awarded the necessary certificates to install and operate that portion of the pipeline system extending from Port of Morgan, Montana, to Ventura, Iowa. Because the pipeline is an interstate pipeline, the construction, installation, maintenance and operation of the line is subject to the provisions of the Natural Gas Pipeline Safety Act of 1968, 49 U.S.C. § 1671 *et seq.* Section 1672 of the Pipeline Safety Act provides that the "Secretary shall ... establish minimum federal safety standards for the transportation of gas" and that these "standards may apply to the design, installation, inspection ... construction ... operation ... and maintenance of pipeline facilities." The Department of Transportation is vested with the authority to adopt safety standards; it did so, *see*, 49 C.F.R. § 192.1 *et seq.*, one of those standards governs the depth at which pipe must be buried, requiring a minimum cover of 36″ for Class 1 locations. 49 C.F.R. § 192.-327.

Plaintiff argues that the Natural Gas Pipeline Safety Act preempts all state and local regulations concerning the safety of interstate gas pipelines and in the alternative that defendant's six foot cover requirement constitutes an unreasonable burden on interstate commerce. Defendant argues that it has authority to pass environmental protective measures as recognized by the National Environmental Policy Act, and that such Act takes precedence over the Natural Gas Pipeline Safety Act. In the alternative defendant urges that its zoning resolution is not a safety measure and therefore does not fall within the preemption provision of the Gas Pipeline Safety Act. We hold that the county lacks statutory authority to exercise its zoning power over interstate gas pipelines.

■ Where a city or county exercises its zoning authority, it is exercising legislative power, *Kiges v. City of St. Paul*, 240 Minn. 522, 530, 62 N.W.2d 363, 369 (1953). Such power exists by virtue of authority delegated to it by the state. *Alexander v. City of Minneapolis*, 267 Minn. 155, 125 N.W.2d 583 (1963); 8 McQuillin, Municipal Corporation (3d ed.) § 25.35; 82 Am.Jur.2d, Zoning and Planning, § 7. The power to grant such authority includes the power to withdraw it. *See, State ex rel. Thelen v. City of Missoula*, 168 Mont. 375, 543 P.2d 173 (1975).

■ In this case the county's authority to regulate land use is granted by Minn.Stat. § 394.01 *et seq.* (1980). That statute is a general enabling statute permitting the county to carry on county planning and zoning activities for purpose of promoting the health, safety and welfare of the community. The counties are given specific authority to regulate pipelines under Minn. Stat. § 116I.01 *et seq.* (1980). That statute requires pipeline to be buried at a minimum of four and one-half feet, Minn.Stat. § 116I.06 subd. 1, and expressly permits counties and municipalities to establish greater depth requirements. *Id.* at Subd. 3(2). However, interstate gas pipelines subject to the safety regulations of the Natural Gas Pipeline Safety Act are exempt from state and local regulation. Minn.Stat. § 116I.06 subd. 4 (1980).

To the extent that a conflict exists, the latter more specific statute controls over the former more general statute. Minn. Stat. § 645.26 (1980); *Schultz v. Ruiz*, 281 Minn. 281, 161 N.W.2d 537 (1968); 2A Sutherland, Statutory Construction § 51.02 at 290 (4th ed. 1973). Minn.Stat. § 116I *et seq.* is the latter more specific statute expressly exempting interstate pipelines from state and local regulation concerning cover. The provisions of that statute take precedence over Minn.Stat. § 394.01 *et seq.*, the general enabling statute delegating to counties the legislative power to zone. Because the authority to regulate interstate pipelines has been withdrawn, the county here was without power to impose the six foot cover requirements on plaintiff. *See, Union Electric Company v. City of Crestwood*, 562 S.W.2d 344 (Mo.1978) (en banc) (statute committing regulation of transmission lines to Public Service Commission precluded municipalities from exercising zoning authority for purposes of regulating such lines). *Morse v. Vermont Division of State Buildings*, 136 Vt. 253, 388 A.2d 371 (1978) (statute exempting state operated sewer facilities from municipal zoning precluded city from regulating construction of state sewer facility); and *Southeastern Displays, Inc. v. Ward*, 414 S.W.2d 573 (Ky.1967). (Provision of Billboard Act governing location of signs precluded municipalities from regulating signs through its zoning power).

Nor does Minn.Stat. 116I.06 Subd. 5 authorize defendant to set different cover requirements. That section permits a county to set reasonable standards and conditions for line construction if such is necessary for the protection and restoration of cultivated agricultural land.

■ A statute must be construed as a whole and, if possible, effect must be given to all its provisions, Minn.Stat. §§ 645.16, 645.17(2); *Van Asperen v. Darling Olds, Inc.*, 254 Minn. 62, 93 N.W.2d 690 (1959), and where provisions of a particular law conflict the more particular provisions govern the more general. Minn.Stat. § 645.26; *Beck v. Groe*, 245 Minn. 28, 70 N.W.2d 886 (1955). Subdivisions 1 through 4 of Section 116I.06 are the more particular and therefore controlling provisions; subdivisions 1 through 3 authorize state and local regulation of cover requirements, subdivision 4 exempts interstate pipelines from such regulation. Defendant then lacks statutory authority to pass a zoning ordinance concerning cover requirements.

■ Moreover, the provisions and legislative history of the Natural Gas Pipeline Safety Act indicate quite clearly that federal legislation has preempted the entire field of gas pipeline safety.

Section 1672(a)1 of the Natural Gas Pipeline Safety Act provides that the,

Secretary shall, by regulation, establish minimum Federal safety standards for the transportation of gas ... [The] standards may apply to the design, installation, inspection ... construction ... operation ... and maintenance of pipeline facilities.

That section goes on to provide that a state may adopt,

additional or more stringent safety standards for intrastate pipeline transportation if such standards are compatible with the Federal minimum standards. *No state agency may adopt or continue in force any such standards applicable to interstate transmission facilities*, after the Federal minimum standards become effective.

(Emphasis added.) The Department of Transportation is vested with the authority to adopt safety standards; it did so; *see* 49 C.F.R. § 192.1 *et seq.*, and one of those standards is the requirement that the pipe be buried a minimum of 36 inches in class 1 locations. 49 C.F.R. § 192.327. The Secretary is also directed to establish a Technical Pipeline Safety Standards Committee, 49 U.S.C. § 1673(a). The committee was established in recognition of the "highly complicated and technical nature of developing and applying safety standards." H.R.Rep. No.1390 (1968) *reprinted in* 3 U.S.Code Cong. & Admin.News 3223, 3247. The federal standards must, by statute, "be practicable and designed to meet the need for pipeline safety." 49 U.S.C. § 1672. Specif-

ic factors to be considered in adopting any standard are set forth in the statute. *Id.* It was the hope of Congress that those standards will provide "for uniformity of regulation where the lines of a single company traverse a number of states." H.R. Rep.No.1390, 90th Cong. 2d Sess., [1968] *reprinted in* 3 U.S.Code Cong. & Admin.News 3223, 3236. Thus even if there were no express preemption, it is obvious that many individual state agencies promulgating regulations according to their own notions of "safety" and "practicability" would frustrate the purpose of the Standards Committee and Congress' intent to establish uniform standards.

Moreover, the notion of state or local participation was expressly rejected. The Federal Power Commission Report on Senate Bill 1166 urged that "the states should be free to improve their own standards for interstate lines and continue their current jurisdiction ... and that the federal standards not preempt additional consistent state regulation of the interstate transmission lines." *Id.* at 3267. That suggestion was rejected when Congress enacted the preemption provision in Section 1672(a). *See also,* H.R.Rep.No.1390, 90th Cong. 2d Sess., [1968] *reprinted in* 3 U.S.Code Cong. & Admin.News 3223, 3245 ("The committee in nowise accepts the declaration that gas safety matters are primarily of local concern and subject to regulation by the states. On the contrary, it is the federal safety standards which are in effect ....")

■ Where Congress has "unmistakenly ordained" a field for exclusive federal regulation there is no room for any state regulation be it consistent with, or more or less stringent than the federal legislation. *Florida Lime and Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963). The Gas Safety Act and its legislative history indicate that Congress has unmistakenly ordained that the federal law preempts state law. The case law is in agreement. In *United Gas Pipeline Co. v. Terrebonne Parish Police Jury,* 319 F.Supp. 1138, 1141 (E.D.La.1970) *aff'd* 445 F.2d 301 (5th Cir. 1971) the court held

that the Natural Gas Pipeline Safety Act "completely preempted" the area of interstate pipeline safety, thereby rendering invalid all local regulation "whether its standards with respect to design, construction, maintenance and operation ... are greater, lesser or identical with" those of the Safety Act. In *United Gas,* the ordinance expressly regulated the construction, installation and operation of gas lines and required, among others, that the lines crossing a ditch, bayou or canal be covered with three to six feet of cover. The district court based its decision on Section 1672 of the Safety Act, the preemption provision, and on the legislative history of the Act which indicates Congress' concern over the need for uniform regulation. *See also, Tenneco Inc. v. Public Service Commission of West Virginia,* 489 F.2d 334, 336 n.7 (4th Cir. 1973) (citing *Terrebonne,* reasserting the position that the Gas Safety Act preempted the field of safety standards for the interstate transmission of gas by pipeline) (dicta). The fact that the ordinance here is cast in terms of natural resource protection is not determinative. Whether or not federal legislation preempts state and local regulation rests on the effect rather than the stated purposes of the legislation. *See, Florida Lime and Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963).

■ Defendant's argument that the National Gas Safety Act is subservient to the National Environmental Protection Act and therefore it can regulate interstate gas lines under the auspices of environmental protection is not persuasive. This pipeline is part of the Alaska Natural Gas Transportation System established under the Alaska Natural Gas Transportation Act. Under that Act, there is *no judicial* review of the required environmental impact statements, rather the President's decision is "conclusive as to the legal and factual sufficiency of the environmental impact statements ..." 15 U.S.C. § 719h(c)(3). By ratifying the President's decision, Congress approved the EIS's for the pipeline system. *Earth Resources Co. v. Federal Energy Regula-*

*tory Commission,* 617 F.2d 775, 779 (D.C.Cir. 1980). Congress has thereby struck a balance between the need to implement the Alaska Natural Gas Transportation System and the policies of the Environmental Protection Act and expressly took that issue from the courts. Were the court to permit this county ordinance to stand under the auspices of environmental regulation, we would disturb that balance. We do not thereby address the issue of whether plaintiff has complied with the various environmental impact statements, but hold only that defendant is without authority to regulate cover requirements for interstate natural gas pipelines.

Defendant is hereby permanently ENJOINED from enforcing any zoning ordinance, resolution or conditional use permit which sets cover requirements for plaintiff's natural gas pipeline.