REQUESTED BY: Terry Carlson, Executive Director Nebraska State Electrical Board
You have requested the opinion of this office regarding whether federal preemption applies and prevents inspections of natural gas and/or gasoline pipeline property by Nebraska electrical inspectors to ensure compliance with Nebraska's State Electrical Act, Neb. Rev. Stat. §§ 81-2101 to 81-2145 (1994 and Cum. Supp. 1995), when the natural gas and/or gasoline pipeline companies' pipelines, property, buildings, and electrical equipment are located in Nebraska. In the opinion request, you explained that the Board's concern stems from a situation where one of the Board's electrical inspectors stopped electrical work being performed on a pipeline company's compressor station project located in Nebraska. The electrical contractor had not obtained a wiring permit for temporary electrical service for construction activities, as required by Neb. Rev. Stat. § 81-2124 (1994). The electrical contractor has since applied for inspection, but the situation may arise again.
After the inspector stopped the work, the Board received a letter from the pipeline company's legal counsel, who asserted that the company is not required to comply with Nebraska's State Electrical Act because federal law controlling interstate pipelines preempts State Electrical Acts. We believe that federal law controlling interstate pipelines does in fact preempt state electrical inspection requirements regarding interstate natural gas or gasoline company pipelines, property, buildings, and electrical equipment, provided that the property is part of the interstate gas pipeline facility.
49 U.S.C. Chapter 601 sets out federal safety standards for gas pipelines. 49 U.S.C. § 60104(c) (1994) states, "A State authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation." Prior to 1994 there were two Acts controlling the area of interstate pipeline safety — the Natural Gas Pipeline Safety Act of 1968 (NGPSA) and the Hazardous Liquid Pipeline Safety Act of 1979 (HLPSA). The NGPSA and the HLPSA were combined and recodified without substantial change at49 U.S.C. §§ 60101 to 60125 in 1994. See P.L. 103-272, 108 Stat. 1371 (July 5, 1994). The two similar provisions from each Act pertaining to preemption were consolidated into what is now 49 U.S.C. § 60104(c).Compare 49 U.S.C. § 60104(c) with
49 U.S.C. § 1672(a)(1) (NGPSA) and 49 U.S.C. § 2002(d) (HLPSA).
For purposes of Chapter 601, the term "gas pipeline facility" is defined to include "a pipeline, a right of way, a facility, a building, or equipment used in transporting gas or treating gas during its transportation." 49 U.S.C. § 60101(3) (1996). It is our understanding that compressor stations are placed along the length of extended pipelines to repressurize the line, ensuring the continual flow of gas through the pipeline. They consist of a small building with pumping equipment, part of or directly adjacent to the pipeline itself. It would appear that compressor stations fall directly under the definition of "gas pipeline facilities."
Nebraska's electrical standards and inspections are general in nature. None of the statutes in the State Electrical Act are directed specifically toward regulation of interstate pipeline facilities. Despite this, Nebraska's electrical safety standards can directly affect gas pipeline facilities, as demonstrated in your opinion request. We point out that the language in § 60104(c) prohibits states from adopting or continuing safety standards intended to apply to interstate pipeline facilities. It does not explicitly address generally applicable state safety requirements, such as electrical standards. However, we believe the language in § 60104(c) likewise proscribes enforcement of general state safety standards which directly impact on those facilities.
We believe the regulations promulgated by the Department of Transportation support the conclusion that state electrical laws cannot be enforced against interstate gas pipeline facilities. The pertinent regulation on this issue states:
 (e) Electrical facilities. Electrical equipment and wiring installed in compressor stations must conform to the National Electrical Code, ANSI/NFPA 70, so far as that code is applicable.
49 C.F.R. § 192.163(e) (1996).
The above regulation sets out a specific minimum federal safety standard controlling electrical equipment used in pipeline compressor stations. It appears to regulate the field of electrical standards for interstate gas pipeline compressor stations. Although this is not a federal statute, it is well established that properly promulgated and adopted federal regulations published in the Code of Federal Regulations carry the force and effect of law. National Medical Enterprises v.Bowen, 851 F.2d 291, 293 (9th Cir. 1988); Moody v.United States, 774 F.2d 150, 156 (6th Cir. 1985); Frisby v.United States Dept. of Housing and Urban Development, 755 F.2d 1052,1055 (3rd Cir. 1985); Bahramizadeh v. United States I.N.S.,717 F.2d 1170, 1173 (7th Cir. 1983). At least one court reviewed the regulations promulgated by the Secretary of Transportation under authority of the former 49 U.S.C. § 1672(a), which was part of the NGPSA and corresponded to the current language at49 U.S.C. § 60104(c). The court stated that although the regulations were not laws enacted by Congress, they have the force and effect of law. See Baker v. Central South WestCorp., 334 F. Supp. 752, 754 n. 3 (N. D. Okla. 1971).49 C.F.R., Part 192, Chapter 1, of which 49 C.F.R. § 192.163(e) is a part, is entitled "Transportation of Natural and Other Gas by Pipeline: Minimum Federal Safety Standards." Congress explicitly authorized the Secretary of Transportation to establish minimum safety standards for pipeline facilities. The applicable statute states: "The Secretary of Transportation shall prescribe minimum safety standards for pipeline transportation and for pipeline facilities." 49 U.S.C. § 60102(a)(1) (1996). Courts reviewing state government attempts to regulate interstate pipelines have acknowledged that the Secretary of the Department of Transportation is responsible for regulation of interstate pipeline safety under the former NGPSA and the HLPSA. SeeWilliams Pipe Line Co. v. Mounds View, Minnesota,651 F. Supp. 551, 554 (D. Minn. 1987).
Article VI, Clause 2 of the United States Constitution contains what is referred to as the Supremacy Clause. This is the section from which the power of federal preemption is derived. It states:
 This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.
U.S. Const., art. VI, cl. 2.
Under the Supremacy Clause, if Congress evidences an intent to occupy a certain field, state laws regulating that same topic are preempted. Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 248
(1984). See also Louisiana Public Service Comm'n v. FCC,474 U.S. 355, 371 (1986). If state electrical codes applied to interstate compressor stations, there would be no need for the federal minimum safety standards established in the previously cited statutes and regulations, particularly the electrical standard set out in 49 C.F.R. § 192.163(e).
Federal preemption of state law is not generally favored. The U.S. Supreme Court has stated that "federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons — either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained."Florida Lime and Avocado Growers, Inc. v. Paul, 373 U.S. 132,142 (1963). An examination of the federal statutes and regulations controlling interstate pipelines demonstrates that Congress intended to completely occupy the field of safety standards applicable to interstate pipeline compressor stations.
The Courts reviewing state government attempts to regulate the construction and safety of interstate pipelines have uniformly held that such state statutes or regulations are preempted. Whether the safety regulations are specific to pipelines or generally applicable and only incidentally affect pipelines does not appear to matter. Preemption applies because Congress intended to completely control the area. The court in the Williams Pipe Line case cited to the preemption clause in the HLPSA, which was essentially identical to the language currently contained in 49 U.S.C. § 60104(c). The court, emphasizing the language prohibiting states from adopting or continuing in force any safety standards applicable to interstate pipeline facilities, stated, "The statute thus clearly expresses Congressional intent to preempt state efforts to establish safety standards for hazardous liquid pipelines." Williams Pipe Line
at 566. The language in the HLPSA and NGPSA now codified at49 U.S.C. § 60104(c) is cited by the courts as the language controlling this topic.
Courts reviewing the preemption clause in the NGPSA, which was virtually identical to that in the HLPSA and the current § 60104(c), have similarly found state attempts to regulate safety aspects of natural gas pipelines are preempted. In ANRPipeline Co. v. Iowa State Commerce Comm'n, 828 F.2d 465 (8th Cir. 1987), the Eighth Circuit reviewed Iowa statutes and regulations pertaining to interstate pipelines. The regulation involved enabled the Iowa Commerce Commission to conduct inspections, issue permits, and hold hearings regarding interstate and intrastate pipelines. The Commission had adopted the U.S. Department of Transportation's regulations controlling construction and safety standards as their own. The pipeline company claimed the NGPSA preempted the state regulations. The Eighth Circuit Court of Appeals held that state regulatory authority concerning the safety of interstate pipelines was preempted. The fact that Iowa adopted the federal standards was found to be irrelevant. The court cited to the language at § 1672(a)(1) in the NGPSA which, as with the similar provision in the current § 60104(c), expressly provides that no state agency may adopt any standards applicable to interstate transmission facilities. Id. at 468. Citing to the NGPSA's legislative history, the court found it was clear that "Congress intended to preclude states from regulating in any manner whatsoever with respect to the safety of interstate transmission facilities." Id. at 470.
The Eighth Circuit again addressed federal preemption of state statutes regulating interstate pipelines in Kinley Corp.v. Iowa Utilities Board, 999 F.2d 354 (8th Cir. 1993). In this case, Iowa had enacted statutes controlling safety requirements for interstate hazardous liquid pipelines. The statutes exempted natural gas pipelines, due to the previous decision in the ANRPipeline case. The Iowa Utilities Board (formerly the Iowa State Commerce Commission) asserted jurisdiction over a pipeline extending from Council Bluffs, Iowa, to Offutt Air Force Base in Bellevue, Nebraska. The Board inspected the pipeline and required the company to file for a pipeline permit. The company filed for the permit, which was denied. The pipeline company challenged the statutes, claiming they were preempted by the HLPSA. The court found the language in 49 U.S.C. § 2002(d) (now recodified without substantial change at 49 U.S.C. § 60104(c)) expressly preempted state safety regulations concerning interstate hazardous liquid pipelines. Kinley Corp. at 358. The court went on to hold that the ANR Pipeline decision was controlling.
In Natural Gas Pipeline Co. v. Railroad Comm'n of Texas,679 F.2d 51 (5th Cir. 1982), the Texas State Railroad Commission adopted a rule requiring certain procedures and safeguards be used by natural gas pipeline companies to warn the public in the event of an accidental release of product. Citing to the language in the former NGPSA at 49 U.S.C. § 1672(a)(1), the court found the Commission's rule was prohibited by the Supremacy Clause of the United States Constitution and held the rule was preempted.
In Northern Border Pipeline Co. v. Jackson County,512 F. Supp. 1261 (D.Minn. 1981), a county enacted an ordinance requiring a pipeline company to bury its pipelines at a minimum depth of six feet. The court pointed out that the NGPSA provided the Department of Transportation with the authority to adopt safety standards for pipelines, which the Department did. The Department of Transportation set the minimum cover for pipelines at three feet. The county's condition was therefore more stringent than the federal standard. The court stated that "the provisions and legislative history of the Natural Gas Pipeline Safety Act indicate quite clearly that federal legislation has preempted the entire field of gas pipeline safety." Id. at 1264. As with the other decisions, the court cited to and emphasized the importance of the language in the NGPSA at § 1672(a)(1). The court also stated that Congress intended the federal standards to provide for uniformity of regulations for companies with pipelines traversing a number of states. The county's ordinance was held to be preempted by the NGPSA, and the court permanently enjoined its enforcement.
Similarly, an ordinance regulating the construction, installation, and operation of gas or liquid petroleum pipelines through a Louisiana parish was held to be preempted by the NGPSA.United Gas Pipeline Co. v. Terrebonne Parish Police Jury,319 F. Supp. 1138 (E.D. La. 1970), aff'd per curiam 445 F.2d. 301 (5th Cir. 1971). The ordinance established requirements for specifications, reports, permits, insurance, fees, and penalties for non-compliance concerning interstate pipelines. Among other provisions, the ordinance mandated that the pipeline company give written notification of pipeline inspections to the police jury. The district court, citing to § 1672(a) of the NGPSA, found that Congress specifically prohibited the states from regulating construction and installation of interstate pipelines, even if the ordinances were identical to federal codes. Id. at 1141.
The pipeline involved in your example transports natural gas or gasoline across state lines. It is our understanding from your opinion request and our conversations with your office, that the Board's concerns are limited to state inspections of these interstate pipeline facilities. We point out that different standards may apply when intrastate pipelines are involved. See49 U.S.C. §§ 60104(c) and 60105; United Steelworkers, Local12431 v. Skinner, 768 F. Supp. 30 (D.R.I. 1991). We also note that state agencies may be allowed to conduct inspections of interstate pipeline facilities for compliance with federal standards, but only when acting as the federal government's agent. See 49 U.S.C. §§ 60106 and 60107(a)(2). However, all enforcement actions are retained at the federal level.
Based on the federal statutes, regulations, and case law cited above, it is our opinion that 49 U.S.C. §§ 60101 to60125, and in particular § 60104(c), demonstrates Congress' intent to completely control the regulation of the safety of interstate gas and hazardous liquid pipelines and preempts state electrical inspection requirements which would otherwise apply to those pipeline facilities located in Nebraska.
Sincerely,
 DON STENBERG Attorney General
 Timothy J. Texel Assistant Attorney General
APPROVED BY:
Don Stenberg
Attorney General