**NATURAL GAS PIPELINE COMPANY OF AMERICA, Plaintiff-Appellee,**

v.

**RAILROAD COMMISSION OF TEXAS, Defendant-Appellant.**

**No. 81–1340.**

United States Court of Appeals,
Fifth Circuit.

June 24, 1982.

Rehearing Denied Aug. 25, 1982.

Ralph T. Aldave, Asst. Atty. Gen., Austin, Tex., for defendant-appellant.

Dyche & Wright, Dennis M. Dylewski, John L. Verner, Houston, Tex., for plaintiff-appellee.

Before THORNBERRY, REAVLEY and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

This is an appeal of a district court's declaratory judgment that certain gas pipeline facilities are not subject to safety standards promulgated by the Texas Railroad Commission because those standards are preempted by provisions of the Natural Gas Pipeline Safety Act. We affirm.

This case was presented to the district court on an agreed statement of facts, accompanied by a number of agreed exhibits, from which the following facts are derived. Natural Gas Pipeline Company of America (Natural), a "natural gas company" within the meaning of the Natural Gas Act, 15 U.S.C. § 717 et seq., is a corporation organized under the laws of the State of Delaware and is qualified to do business in Texas. The Railroad Commission is an administrative agency charged with the duty of regulating the production, transportation and conservation of oil and gas in Texas. Natural owns and operates a pipeline system used for transporting natural gas principally from Texas, Louisiana and New Mexico northward toward distribution points primarily in the Chicago area. The present controversy involves a portion of Natural's pipeline system, known as the Maud Lateral, which consists of a measuring station, approximately twenty-two miles of 8⅝ inch diameter pipe and a purification plant. The Maud Lateral is used to take delivery of natural gas from two sellers in the Maud Gas Field, Bowie County, Texas, and to purify such gas and transport

it to Natural's Gulf Coast trunk line which traverses Miller County, Arkansas. The gas purchased by Natural in the Maud field contains sulphur and hydrogen sulfide as constituent elements. Hydrogen sulfide is extremely toxic and the release of hydrogen sulfide into the atmosphere presents a severe public health hazard. Removal of the sulphur and hydrogen sulfide is necessary to render the gas fit for consumption by Natural's customers and to protect the pipelines from corrosion and obstruction, and is performed at the purification plant.

The Railroad Commission has adopted "Rule 36," which requires persons or firms conducting specified operations in the state, including gathering, processing and transportation of natural gas, to provide specified procedures and safeguards to warn and protect the general public against the accidental release of hydrogen sulfide from their facilities. Operators covered by Rule 36 are required to file a certificate of compliance. The Railroad Commission requested Natural to file a certificate of compliance under Rule 36 for that portion of its Maud Lateral beginning at the measuring station and extending to and including the purification plant. Natural failed and refused to file the certificate of compliance for any portion of its Maud Lateral. To avoid legal action by the Railroad Commission for Natural's failure to comply with Rule 36, Natural brought this action for a declaratory judgment. The district court found that the safety regulations promulgated pursuant to the Natural Gas Pipeline Safety Act clearly overlap the requirements of Rule 36 and concluded, therefore, that Natural's Maud Lateral facilities are not subject to Rule 36.

In 1968, Congress passed the Natural Gas Pipeline Safety Act (NGPSA), 49 U.S.C. § 1671 *et seq.* The purpose of that act was "to provide for the prescription and enforcement of minimum Federal safety standards for the transportation of natural and other gas by pipeline and for pipeline facilities." H.R.No.1390, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad. News 3223. Section 1672(a)(1) of that act explicitly states as follows:

The Secretary shall, by regulation, establish minimum Federal safety standards for the transportation of gas and pipeline facilities . . . . Any State agency may adopt additional or more stringent safety standards for intrastate pipeline transportation if such standards are compatible with the Federal minimum standards. *No State agency may adopt or continue in force any such standards applicable to interstate transmission facilities,* after the Federal minimum standards become effective.

49 U.S.C. § 1672(a)(1) (emphasis added).

"[W]hen Congress has 'unmistakably . . . ordained,' *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 10 L.Ed.2d 248, 83 S.Ct. 1210 [1217] (1963), that its enactments alone are to regulate a part of commerce, state laws regulating that aspect of commerce must fall. This result is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose. *City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 633, 36 L.Ed.2d 547, 93 S.Ct. 1854 [1859] (1973); *Rice v. Santa Fe Elevator Corp.,* [331 U.S.] at 230, 91 L.Ed. 1447, 67 S.Ct. 1146.

*Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). To the extent that Rule 36 is applicable to "interstate transmission facilities," therefore, we agree with the district court that it is void and that its application is prohibited by the Supremacy Clause of the United States Constitution. *Accord, Northern Border Pipeline Co. v. Jackson County,* 512 F.Supp. 1261 (E.D.Minn.1981); *United Gas Pipeline Co. v. Terrebone Parish Police Jury,* 319 F.Supp. 1138 (E.D.La.1970), *aff'd* 445 F.2d 301 (5th Cir. 1971). *See also Tenneco Inc. v. Public Service Commission,* 489 F.2d 334 (4th Cir. 1973), *cert. denied,* 417 U.S. 946, 94 S.Ct. 3071, 41 L.Ed.2d 666 (1974) (while Congress preempted the field of safety with respect to the *establishment* and *enforcement* of standards regulating the interstate transmission of gas by pipeline, it invited the states to participate in

the program by voluntarily undertaking the indispensable task of *inspection*).

The Railroad Commission makes two arguments in support of its contention that the application of Rule 36 to Natural's Maud Lateral is not preempted by the NGPSA. First, it argues that Natural's Maud Lateral facilities are not "interstate transmission facilities" within the meaning of § 1672(a)(1). Second, it argues that Rule 36 does not obstruct the purposes and objectives of the NGPSA. We find no support for the argument that Natural's Maud Lateral facilities are not "interstate transmission facilities" and no relevance to the argument that Rule 36 does not obstruct the purposes and objectives of the NGPSA.

Section 1672(a)(1) expressly prohibits state adoption or enforcement of safety standards applicable to "interstate transmission facilities." Section 1671(8) defines "interstate transmission facilities" as:

> pipeline facilities used in the *transportation of gas* which are subject to the jurisdiction of the Federal Energy Regulatory Commission under the Natural Gas Act, except that it shall not include any pipeline facilities within a State which transport gas from an interstate gas pipeline to a direct sales customer within such State purchasing gas for its own consumption.

"Transportation of gas" is defined in § 1671(3) as:

> the gathering, transmission or distribution of gas by pipeline or its storage in interstate or foreign commerce; except that it shall not include *the gathering of gas* in those rural locations which lie outside the limits of any incorporated or unincorporated city, town, village, or any other designated residential or commercial area such as a subdivision, a business or shopping center, a community development, or any similar populated area

which the Secretary may define as a non-rural area.

The Railroad Commission argues that under the foregoing definitions it is apparent that Natural's Maud Lateral is not an "interstate transmission facility," as to which state safety regulation is preempted by the express language of § 1672(a)(1), but is instead a "gathering line," because it is a pipeline that transports gas from producers in the gas field to a transmission line that in turn transports the gas to distribution points in the North. Although the NGPSA does not define the phrase "the gathering of gas" used in the definitions above, the distinction between gathering lines and transmission lines is not an unfamiliar one in this area. The Supreme Court has confronted the distinction numerous times in reference to the Natural Gas Act. *See, e.g., Northern Natural Gas Co. v. State Corporation Commission*, 372 U.S. 84, 83 S.Ct. 646, 9 L.Ed.2d 601 (1963); *Phillips Petroleum Co. v. Wisconsin*, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035 (1954); *Interstate Natural Gas Co. v. Federal Power Commission*, 331 U.S. 682, 67 S.Ct. 1482, 91 L.Ed. 1742 (1947); *Colorado Interstate Gas Co. v. Federal Power er Commission*, 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206 (1945). While the Railroad Commission focuses on the phrase "transportation of gas," used in defining "interstate transmission facilities," it ignores the full context in which that phrase is used. The definition refers to "pipeline facilities used in the transportation of gas *which are subject to the jurisdiction of the Federal Energy Regulatory Commission under the Natural Gas Act.*" 49 U.S.C. § 1671(8) (emphasis added). We therefore construe the exception to § 1671(3) for "production and gathering" with reference to the analogous exception in the Natural Gas Act, 15 U.S.C. § 717 *et seq.*[1] In the context of the Natu-

---

1. § 1(b) of the Natural Gas Act, 15 U.S.C.A. § 717(b), states, in pertinent part:

> The provisions of this chapter shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natu-

ral-gas companies engaged in such transportation or sale, but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the *production or gathering* of natural gas. (Emphasis added.)

ral Gas Act, the Supreme Court has consistently held that "gathering" is a term "narrowly confined to the physical acts of drawing the gas from the earth and preparing it for the first stages of distribution." *Northern Natural Gas Co. v. State Corporation Commission of Kansas*, 372 U.S. 84, 90, 83 S.Ct. 646, 649, 9 L.Ed.2d 601 (1963). As in *Northern Natural Gas*, the regulatee in this case "is not a producer but a purchaser of gas from producers, and none of its activities ... shown upon this record involves 'production and gathering, in the sense that those terms are used in § 1(b) [of the Natural Gas Act] ....'" *Id.* *Accord, Ben Bolt Gathering Co. v. Federal Power Commission*, 323 F.2d 610 (5th Cir. 1963). *See also* Annot., 44 A.L.R.Fed. 843 (1979).

As for the Railroad Commission's argument that Rule 36 does not obstruct the purposes and objectives of the NGPSA, it is unnecessary to reach that question as Congress has here explicitly preempted the regulations in question. The Railroad Commission has meticulously compared the provisions of Rule 36 with the regulations promulgated under the NGPSA in an attempt to demonstrate that none of the provisions of Rule 36 are inconsistent with the regulations promulgated under the NGPSA. It has not contended, and we believe reasonably could not contend, that the provisions of Rule 36 are not "such standards" as are contemplated in § 1672(a)(1). "Where Congress has 'unmistakably ordained' a field for exclusive federal regulation there is no room for any state regulation be it consistent with, or more or less stringent than the federal legislation." *Northern Border Pipeline Co. v. Jackson County*, 512 F.Supp. 1261, 1265 (D.Minn.1981). *See also United Gas Pipeline, supra*, at 1141. While the Railroad Commission contends that Rule 36 and the NGPSA have different purposes, that also is irrelevant. *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963).

We affirm the judgment of the district court to the extent that it holds Rule 36 preempted with respect to "interstate pipeline facilities." Because Natural's Maud Lateral facility is such a facility, we need not determine whether Rule 36 is preempted with respect to any other kinds of facilities. *See Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 159, 98 S.Ct. 988, 995, 55 L.Ed.2d 179 (1978).

AFFIRMED.