**SOUTH DAKOTA PUBLIC UTILITIES COMMISSION and Minnesota Public Utilities Commission, Petitioners,**

**v.**

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Northern States Power Company (Minnesota), Northern States Power Company (Wisconsin), Public Service Commission of Wisconsin, Intervenors.**

No. 82–1276.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1982.

Decided Oct. 19, 1982.

---

675

Philip J. Mause, Norman A. Pedersen,

Philip J. Mause, Norman A. Pedersen, Washington, D. C., for the Public Service Commission of Wisconsin; Steven M. Schur, Chief Counsel of the Public Service Commission of Wisconsin, Madison, Wis., of counsel.

George F. Bruder, Albert R. Simonds, Jr., Bruder & Gentile, Washington, D. C., Gene R. Sommers, David A. Lawrence, Minneapolis, Minn., for intervenors Northern States Power Co. (Minnesota) and Northern States Power Co. (Wisconsin).

Mark V. Meierhenry, Atty. Gen., of the State of South Dakota, S. Walter Washington, Asst. Atty. Gen., Public Utilities Commission, Pierre, S. D., and Warren R. Spannaus, Atty. Gen. of the State of Minnesota, Kenneth A. Nickolai, Sp. Asst. Atty. Gen., Minnesota Public Utilities Commis-

sion, St. Paul, Minn., for petitioners South Dakota Public Utilities Com'n and Minnesota Public Utilities Com'n.

Charles A. Moore, Gen. Counsel, Jerome M. Feit, Sol., Joanne Leveque, Atty., Washington, D. C., for respondent Federal Energy Regulatory Com'n.

Before LAY, Chief Judge, and BRIGHT and JOHN R. GIBSON, Circuit Judges.

PER CURIAM.

The South Dakota Public Utilities Commission and Minnesota Public Utilities Commission petition for review of the order of the Federal Energy Regulatory Commission (FERC) dated December 3, 1981 dealing with the costs of cancellation of the Tyrone Energy Park, a nuclear powered electric generating plant. Northern States Power Company (Minnesota) and its wholly-owned subsidiary, Northern States Power Company (Wisconsin), and Public Service Commission of Wisconsin have intervened.

The Nuclear Regulatory Commission (NRC) issued a permit to Northern States Power Company to construct the Tyrone plant on December 23, 1977. On March 6, 1979 the Wisconsin Public Service Commission denied Northern States Power authority to construct and operate the proposed Tyrone unit. Northern States on July 24, 1979 announced that it was cancelling the Tyrone project and abandoned its appeal of the Wisconsin Commission's decision. After a hearing before an Administrative Law Judge, FERC entered its opinion and order December 3, 1981, adopting the findings of the Administrative Law Judge with certain exceptions. In essence, FERC ruled that the costs arising from the cancellation of the Tyrone plant would be allocated 87% to Northern States Power (Minnesota) and 13% to Northern States Power (Wisconsin). This allocation was made pursuant to a coordinating agreement adopted by the two Northern States Power Companies based on a participation ratio derived from a five-year average summer and winter peak demands of the two-company system. The net result of this order was a 1% increase in utility rates for ratepayers in Wisconsin, Minnesota, North Dakota, and South Dakota. Placing all of the burden on Wisconsin would have resulted in a 13% increase in rates for Wisconsin ratepayers.

This court in *Union Electric Company v. Federal Energy Regulatory Commission*, 668 F.2d 389, 392–93 (8th Cir. 1981), discussed at some length the appropriate judicial standards and scope of review in evaluating challenges to FERC rate-making. Briefly stated, if a challenge is made to the Commission's findings of facts, our review is limited to deciding whether the findings are supported by substantial evidence. If a challenge otherwise claims a lack of justness or reasonableness, we determine only whether the order itself, viewed in its entirety, is within the zone of reasonableness. A Commission order carries with it a presumption of validity, and the challenger has a heavy burden of showing that the order is outside the zone of reasonableness. So tested, the numerous claims of the South Dakota and Minnesota Public Utilities Commissions fail.

Petitioners argue that FERC's conclusion that the allocation in accordance with the coordinating agreement was just and reasonable is an error of law, and that we should examine de novo FERC's interpretation of the statutory term just and reasonable. We disagree. The common statutory requirement of just and reasonable rates is a criterion for administrative application in determining a lawful rate. The statutory prescription is "a standard for the Commission to apply and, independently of Commission action, creates no right which courts may enforce." *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 251, 71 S.Ct. 692, 695, 95 L.Ed. 912 (1951). As the Supreme Court said in *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856 (1981), "No court may substitute its own judgment on reasonableness for the judgment of the Commission. The authority to decide whether the rates are reasonable is vested . . . solely in the Commission . . . ."

Petitioners claim that the allocation of the expenses of the cancellation approved Wisconsin's advancement of its parochial interests, in that the major burden fell on Minnesota, South Dakota, and North Dakota ratepayers and only a minor portion on Wisconsin ratepayers, and that in making this allocation Wisconsin had looked only to the interests of its own citizens and ratepayers.

The Administrative Law Judge found:

The Wisconsin Commission's decision denying project certification is none too clear, and while its primary emphasis is on the needs and capacity of NSP–Wisconsin, the Commission did take into consideration the needs and capacity of the overall NSP System.

We agree that the Coordinating Agreement and its participation ratios methodology should govern the allocation of the cancellation costs between the two NSP Companies.... The Tyrone project was initiated, planned and carried forward to meet the needs and requirements of both NSP Companies as part of an integrated system and both would have shared in the costs and benefits of the project, had it been built, in accordance with the terms of their Coordinating Agreement. It is only just and reasonable that the cancellation costs should be shared by the two companies in the same fashion that the costs of the project would have been shared had it come to line.

The FERC order found:

(A) The Amendment to the Coordinating Agreement of Northern States Power Company (Minnesota) and Northern Power Company (Wisconsin) filed with the Commission on August 24, 1979, is just and reasonable. It is approved as a rate schedule change pursuant to § 205 of the Federal Power Act subject to the modification ordered in Paragraph (B) below.

Petitioners further argue that Northern States Power's abandonment of its appeal in the Wisconsin case was imprudent and unreasonable. The Administrative Law Judge found:

NSP's decision to abandon the Tyrone project was made primarily on the basis that even if an appeal from the Wisconsin adverse decision were successful, the project could not be built and placed in operation before 1989 *at the earliest;* the NSP system, however, would be short of generating capacity unless a new generating unit were added in the period 1985–89 .... On the other hand, the Wisconsin Commission had urged and directed the filing of an application for a coal-fired plant and there was good reason to believe that such a plant could be built within the necessary 1985–89 time period.

Faced with the choices, as discussed above, it is concluded that NSP was not imprudent in cancelling the Tyrone project but that its decision to do so was reasonable under all the circumstances.

Petitioners argue that treatment of the common equity portion of Allowance for Funds Used During Construction (AFUDC) was arbitrary and capricious, an abuse of discretion, and not supported by substantial evidence in the record.

The FERC order concluded:

We think it entirely appropriate to allocate the carrying costs accruing prior to abandonment to the ratepayers and those pertaining to the amortization period to the utility.

Petitioners further argue that FERC's refusal to adopt a 30-year amortization period was arbitrary and capricious, an abuse of discretion, and not supported by substantial evidence. The Administrative Law Judge found:

We conclude that the Staff's variable amortization period targeted at ten years should be adopted....

It protects the ratepayers from overpayment and prepayment on the one hand and allows the Company a shortened amortization period on the other if it is able to bring down the cost of the loss from the estimates. This method will reflect losses that are known, not estimated. The lengthening of the targeted period from five to ten years and, in effect, affording the company an in-

centive to settle vendor claims quickly and modestly should produce these desirable results. Staff is also correct in pointing out that the formula will result in rate stability....

 We conclude that each of the above claims made by the petitioners is fully and adequately answered, under the standards of review discussed in *Union Electric Co. v. FERC, supra,* by the passages set forth from the initial decision of the Administrative Law Judge and from the order and opinion of FERC. We cannot conclude that these findings were arbitrary and capricious or an abuse of discretion or that the findings were not supported by substantial evidence.

Petitioners make three claims essentially legal in nature, which we reject.

 First, petitioners argue that the Wisconsin Commission's decision denying the permit to construct the Tyrone plant is a collateral attack on the Nuclear Regulatory Commission order, and that collateral estoppel applies. The record reveals that the NRC proceeding had been remanded and thus lacked finality. In addition, different statutes and different bodies of evidence were considered by the two commissions. Secondly, petitioners argue that federal preemption bars the action of the Wisconsin Commission. The Administrative Law Judge recognized that the Nuclear Regulatory Commission has exclusive jurisdiction in the area of radiation hazards, but that state authority to regulate for other purposes is not affected (42 U.S.C. § 2021(k)). As observed by the Administrative Law Judge, the Wisconsin Commission's denial turned on lack of need for the nuclear plant, economic disbenefits, and superiority of alternative means of generation. Thirdly, petitioners argue that the order of the Wisconsin Commission is a burden on interstate commerce and rely principally on *New England Power Company v. New Hampshire,* 455 U.S. 331, 102 S.Ct. 1096, 71 L.Ed.2d 188 (1982). We have carefully considered the petitioners' argument and find that the circumstances in the *New England Power* case to be so substantially different that it is inapplicable, and that petitioners' argument to be without merit.

Petitioners also argue that the inclusion of lost vendor profit exceeds Northern States Power's obligation under the contract, but as recognized in the FERC order, these determinations are on-going and not yet final. They present nothing for our review.

We have carefully considered the arguments of petitioners but must conclude that the order of FERC is supported by substantial evidence on the record as a whole and that no error of law appears. Accordingly, we affirm.