ANR PIPELINE COMPANY, Appellee,

v.

IOWA STATE COMMERCE COMMIS-
SION, Andrew Varley, individually and
in his official capacity as Commission-
er, Christine Hansen, individually and
in her official capacity as Commission-
er, Paul Franzenburg, individually and
in his official capacity as Commission-
er, Appellants.

Office of Consumer Advocate.

ANR PIPELINE COMPANY, Appellee,

v.

IOWA STATE COMMERCE COMMIS-
SION, Andrew Varley, individually and
in his official capacity as Commission-
er, Christine Hansen, individually and
in her official capacity as Commission-
er, Paul Franzenburg, individually and
in his official capacity as Commission-
er, Office of Consumer Advocate, Ap-
pellant.

Nos. 86–2200, 86–2235.

United States Court of Appeals,
Eighth Circuit.

Submitted May 11, 1987.

Decided Sept. 8, 1987.

Rehearing and Rehearing En Banc
Denied Oct. 23, 1987.

Patrick J. Nugent, Des Moines, Iowa, for Iowa State Commerce Commission, et al.

Ronald C. Polle, Des Moines, Iowa, for Office of Consumer Advocate.

Richard A. Davidson, Davenport, Iowa, for appellee.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

This case requires us to decide whether, and to what extent, the Natural Gas Pipeline Safety Act (NGPSA), 49 U.S.C. §§ 1671–1686, preempts an Iowa statute designed to regulate the construction and operation of pipelines transporting natural gas in and through the state. Plaintiff ANR Pipeline Company (ANR) raises a challenge under the Supremacy Clause [1] to the application of Iowa Code Chapter 479 to an ANR interstate gas pipeline located in Henry County, Iowa.[2] The District Court held that, with few exceptions, the NGPSA and the Natural Gas Act of 1938 (NGA), 15 U.S.C. §§ 717–717z, preempted the provisions of the Iowa law. We affirm.

**I.**

Under Iowa Code Chapter 479 and the accompanying regulations, the Iowa State Commerce Commission (the Commission) administers an extensive hearing, inspection, and permit program for pipelines and other gas transmission and storage facilities. The statute gives the Commission the authority to supervise both intrastate and interstate transportation of natural gas by pipeline, and is designed "to protect the safety and welfare of the public...." Iowa Code Ann. § 479.1 (West Supp.1987). The statute requires pipeline companies to submit detailed plans regarding the proposed construction of underground pipelines, *id.* at §§ 479.5–.6; to undergo a public notice and evidentiary hearing proce-

1. Art. VI, Clause 2 of the United States Constitution provides that:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

2. There is no dispute that the pipeline constitutes an "interstate transmission facility" within

the meaning of the NGPSA, 49 U.S.C. § 1671(8), even though the pipeline is located wholly within a single Iowa county. This anomalous nomenclature is attributable to the judicial treatment of early state attempts to regulate the transportation of natural gas, to the resulting jurisdictional provisions of the Natural Gas Act of 1938, 15 U.S.C. § 717 et seq. and the relationship of those provisions to the NGPSA. *See generally Arkansas Electric Cooperative Corp. v. Arkansas Public Service Commission,* 461 U.S. 375, 377–80, 103 S.Ct. 1905, 1908–10, 76 L.Ed.2d 1 (1983).

dure, *id.* at §§ 479.7–.11; to apply for and obtain a permit before beginning construction, *id.* at § 479.5; to preserve topsoil, drainage structures, and underground improvements in burying pipelines, *id.* at § 479.29; and to submit to an inspection program designed to insure compliance with the statute and its regulations, *id.* at § 479.4. Permits issued under the statute are subject to "such terms, conditions and restrictions as to safety requirements and as to location and route as may be determined by [the Commission] to be just and proper." *Id.* at § 479.12. The statute empowers the Commission to bring actions in Iowa courts to enforce compliance with the conditions of permits, *id.* at § 479.28, and to assess fines of up to $1000 per day for each violation of the statute's provisions, *id.* at § 479.31. The statute also provides for the resolution of damages claims resulting from the construction and operation of a pipeline, and requires that companies have in place the procedures and the financial capacity to settle and pay such claims. *Id.* at §§ 479.26, .41–.46.

Regulations issued by the Commission under its statutory authority, *id.* at § 479.-17, provide more detailed standards to be employed in the permit application process, in pipeline construction and operation, and in the adjudication of damages claims. Iowa Admin.Code r. 250–9.1 *et seq.*, 250–10.1 *et seq.* (1983). Most significantly for purposes of this appeal, the Commission has adopted as its own regulations the construction, operation, maintenance, and safety standards promulgated by the U.S. Department of Transportation under the NGPSA. *Id.* at 250–10.12–.13 (1983).

Under the NGA, pipeline companies proposing to construct an interstate pipeline must obtain a Certificate of Public Convenience and Necessity from the Federal Energy Regulatory Commission (FERC) authorizing the construction and operation of the pipeline. 15 U.S.C. § 717f(c)(1)(A). Although the certification process usually entails a notice and adjudicative hearing, the statute authorizes FERC in an "emergency" to issue a temporary certificate without such notice and hearing, in order to provide immediate service to particular customers. *Id.* at § 717f(c)(1)(B).

Under the NGPSA, the Secretary of Transportation is required to establish comprehensive safety standards for all pipeline facilities, and to administer an inspection program designed to insure industry compliance with the applicable safety standards. 49 U.S.C. §§ 1672, 1677, 1680–81. The NGPSA also requires pipeline companies to certify to FERC in any certification proceeding under the NGA that they "will design, install, inspect, test, construct, operate, replace, and maintain" the facilities they propose to construct in accordance with the applicable safety standards of the NGPSA. *Id.* at § 1676. This certification of compliance with the NGPSA standards is binding on FERC for purposes of the NGA certification process, "unless the relevant enforcement agency[3] has timely advised [FERC] in writing that the applicant has violated safety standards established pursuant to" the NGPSA. *Id.*

Under its § 717f "emergency" authority, FERC issued a temporary certificate to ANR on August 14, 1984, to allow the company to build a 2.6 mile section of four-inch diameter pipeline in Henry County, Iowa. Appendix of Record Exhibits (App.) at 144. The pipeline was necessary to supply gas to a local pipeline company for

---

**3.** Under Section 5 of the NGPSA, state agencies with jurisdiction over natural gas pipelines can certify to the Secretary of Transportation that a state safety enforcement program is in place which is at least as comprehensive as the federal standards promulgated under NGSPA. 49 U.S.C. § 1674(a). The effect of a state certification under this section is to render the NGPSA inapplicable to those transmission facilities within the state that are not subject to FERC's jurisdiction under the NGA, *i.e.,* to *intrastate* facilities. *See* 15 U.S.C. § 717(b). Hence, in the case of some intrastate pipelines, the "relevant enforcement agency" is a state agency. However, in the case of an interstate pipeline such as the one at issue in this case, the pipeline is subject to FERC jurisdiction. Thus, the § 1674(a) exclusion from NGPSA coverage and provision for regulation by a state agency is not available. The "relevant enforcement agency" in this case involving an interstate pipeline is the Department of Transportation's Office of Pipeline Safety. *See* 49 C.F.R. § 190.1 (1986).

service to a corn-drying operation needing the gas in time for the 1984 fall harvest. Although both pipeline companies previously had applied for permits under Iowa Chapter 479, ANR began construction on August 14, without having received the Iowa permit. App. at 76–78.

On August 24, 1984, the Commission held a hearing on the Chapter 479 applications, and approved each of them. App. at 52–57. However, the Commission's Hearing Examiner expressed displeasure that ANR had begun construction before obtaining a permit, and, in a later ruling, recommended that the Office of Consumer Advocate make a determination whether to recommend the imposition of civil penalties against ANR under Iowa Code § 479.31. District Court Order (Order) at 2. The Office of Consumer Advocate did recommend civil penalties, and, after an evidentiary hearing, the Commission imposed the maximum fine of $1,000 per day against ANR for each of the ten days during which it proceeded with construction of the pipeline without an Iowa permit. App. at 93–106. ANR raised its preemption arguments in the evidentiary hearing on the fine, but the Commission rejected them. App. at 101–03. ANR then filed this action in federal court seeking declaratory and injunctive relief from the imposition of the Chapter 479 fines. The District Court held that the Iowa law was in most respects preempted by federal law, and ruled that ANR was entitled to injunctive relief. The Commission and the Office of Consumer Advocate appeal.

## II.

The case is governed by familiar principles of federal preemption:

Under the Supremacy Clause, federal law may supersede state law in several different ways. First, when acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms. In the absence of express pre-emptive language, Congress' intent to pre-empt all state law in a particular area may be inferred where the scheme of federal regulation is suffi-

ciently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation. Pre-emption of a whole field also will be inferred where the field is one in which "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."

Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulation is a physical impossibility," or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (citations omitted).

In the NGPSA, Congress expressly has preempted state regulation of safety in connection with interstate gas pipelines. Although the NGPSA permits the states to "adopt additional or more stringent safety standards for *intrastate* pipeline transportation if such standards are compatible with the Federal minimum standards," the same section provides that "[n]o State agency may adopt or continue in force *any* such standards applicable to *interstate* transmission facilities...." 49 U.S.C. § 1672(a)(1) (emphasis added).

In addition to this express statutory language, the legislative history of the NGPSA contains a number of similar expressions of Congress's intent to preempt state safety regulation with respect to interstate pipelines. The House report on the bill specifically addresses the argument that because the states have a strong police power interest in the regulation of utilities, *see Arkansas Electric Cooperative Corp. v. Arkansas Public Service Commission,* 461 U.S. 375, 377, 103 S.Ct. 1905, 1908, 76 L.Ed.2d 1 (1983), state and local regulation of pipeline safety is warranted:

The committee in nowise accepts the declaration that gas safety matters are primarily of local concern and subject to regulation by the States. On the contrary, it is the Federal safety standards which are in effect and the ultimate responsibility for establishment and enforcement of the Federal safety standards is the responsibility of the Secretary. The bill reported gives to the States in certain circumstances, a role in the enforcement of these standards. This role not only initially but annually is up for review. If the Secretary is not satisfied with the State's performance of the role, he is not bound by the State's certification, but may reject it.

H.R.Rep. No. 1390, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News 3223, 3245. This language makes clear that even with regard to intrastate safety issues, the federal interest remains strong, and that state regulatory authority is subject to federal approval. With respect to interstate facilities, Congress's intent regarding the preemption of state authority was even more explicit and unqualified: "[t]he committee language also takes from the States and gives to the Secretary the regulation of safety of the interstate transmission lines." *Id.*

Not surprisingly, courts interpreting this language universally have held that the text and the legislative history of the NGPSA indicate an express intent by Congress to preempt state regulation of safety issues with respect to interstate pipeline facilities. In *Natural Gas Pipeline Co. of America v. Railroad Commission*, 679 F.2d 51 (5th Cir.1982), the Fifth Circuit found that a Texas Railroad Commission rule requiring natural gas companies "to provide specified procedures and safeguards to warn and protect the general public against the accidental release of hydrogen sulfide from their facilities" was preempted by the NGPSA. *Id.* at 52. Responding to the Railroad Commission's argument that the local rule did not conflict with the purposes and objectives of the federal law, the court observed that "it is unnecessary to reach that question as Congress has here explicitly preempted the regulations in question." *Id.* at 54.

Similarly, in *Northern Border Pipeline Co. v. Jackson County*, 512 F.Supp. 1261 (D.Minn.1981), the district court enjoined enforcement of a conditional land use permit issued by a Minnesota county to a pipeline company seeking to construct an interstate pipeline through the county. The permit would have required the company to bury the pipeline at a minimum depth of six feet, while applicable federal regulations required a depth of only three feet. *Id.* at 1263. The district court found that both the text and the legislative history of the NGPSA "indicate that Congress has unmistakenly [sic] ordained that the federal law preempts state law" in the regulation of interstate gas pipeline safety, and that "there is no room for any state regulation be it consistent with, or more or less stringent than the federal legislation." *Id.* at 1265.

Finally, in *United Gas Pipeline Co. v. Terrebonne Parish Police Jury*, 319 F.Supp. 1138, 1141 (E.D.La.1970), *aff'd*, 445 F.2d 301 (5th Cir.1971) (per curiam), the district court found that Congress completely had preempted the field of interstate pipeline safety, and specifically had prohibited the states from "doing anything in this regard." In rejecting the defendant's argument that its own gas pipeline construction standards were not preempted because they were identical to the federal standards, the court observed that Congress had "left nothing to the states with respect to regulation and control" of interstate pipeline safety and that "all regulatory authority and control is with the federal government." 319 F.Supp. at 1142.

The Iowa Commission also argues that because it has adopted the federal standards in its own regulations, its permit system is not preempted. Pointing to the language of § 1672(a)(1), the Commission apparently argues that the prohibition against the states' adoption of "such standards" with respect to interstate facilities applies only to the "additional or more stringent" safety standards which are permitted with respect to intrastate facilities.

According to the Commission, the adoption of identical standards is permissible under the statute, because such standards are not "additional or more stringent" than the federal standards. Brief of Appellant at 13–16.

We find no merit in this argument. The portions of the legislative history quoted above make clear that Congress intended to preclude states from regulating in any manner whatsoever with respect to the safety of interstate transmission facilities. We agree with the conclusion reached by the District Court, and by the courts in *Natural Gas Pipeline* and *Terrebonne Parish,* that the NGPSA leaves nothing to the states in terms of substantive safety regulation of interstate pipelines, regardless of whether the local regulation is more restrictive, less restrictive, or identical to the federal standards.

■ However, this does not mean that the states are precluded under federal law from any role in enforcement with respect to the safety of interstate facilities. FERC regulations require that affected states receive notice of any application for a certificate under the NGA, 18 C.F.R. § 157.9 (1987), and state agencies may intervene in any FERC proceeding on an application for a certificate,[4] 18 C.F.R. § 385.214(a)(2) (1987). In addition, under section 5(d) of the NGPSA, the Secretary of Transportation is authorized to reimburse a state agency that acts as the Secretary's agent in the regulation of interstate transmission facilities. 49 U.S.C. § 1674(d). This authority was made necessary by the Secretary's previous lack of enforcement staff, and by the regulatory invitation issued to the states to act as the Secretary's agents

for enforcement of the federal safety standards.[5] *See Tenneco, Inc. v. Public Service Commission,* 489 F.2d 334, 337 (4th Cir.1973) (quoting former 49 C.F.R. § 190.6 and 35 Fed.Reg. 13,249–50 (1970)), *cert. denied,* 417 U.S. 946, 94 S.Ct. 3071, 41 L.Ed.2d 666 (1974). Under this agency arrangement, certain states, including Iowa, are authorized to inspect interstate facilities located within their borders, and to monitor compliance with the federal standards. *See* 33 Fed.Reg. 13,249–50 (1970). However, that authority "does not create enforcement authority in the State. Enforcement actions, except those which the operator voluntarily accepts, will be taken at the Federal level." *Id.* at 13,250.

■ The Commission argues that the hearing, permit and inspection program contained in Iowa Code Chapter 479 merely implements this agency arrangement, by alerting the Commission of a company's intent to construct a pipeline, and thus allowing the Commission to assess the company's compliance with the applicable safety standards during all phases of construction. The Commission insists that it does not enforce compliance with the federal safety standards, but merely inspects interstate facilities and notifies the Office of Pipeline Safety if violations are detected. The Commission notes, however, that under the agency agreement with the Secretary of Transportation, it is charged with the responsibility to make such inspections. According to the Commission, it must receive prior notice of pipeline construction through the Chapter 479 application and permit process, in order to perform its federal safety inspection duties under the agency agreement.

---

**4.** As the Commission points out, this notice and opportunity to intervene was of little value in this case, because the notice of application for the temporary certificate did not appear in the Federal Register until August 27, 1984, 49 Fed. Reg. 33,925 (1984), almost two weeks after the certificate was issued. App. at 145. However, we do not agree with the Commission's contention that in the usual case, a notice "buried somewhere in the thousands of pages of the *Federal Register*" is inadequate to alert the Commission of proposed action by FERC on a pipeline application. Reply Brief of Appellant at 13.

**5.** That invitation has since been rescinded, and no new state agencies are authorized to act as agents of the Secretary with respect to interstate facilities. App. at 130–31. However, those state agencies that had become agents for the Secretary before the withdrawal of the interstate agency regulation generally continue in that role. The Iowa Commission is one of these agents.

Citing *California Coastal Commission v. Granite Rock Co.*, —— U.S. ——, 107 S.Ct. 1419, 94 L.Ed.2d 577 (1987) and *Pacific Gas and Electric Co. v. State Energy Resources Conservation & Development Commission*, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983), the Commission argues that such a dual permit system is constitutionally valid as long as the requirements of the state permit do not directly conflict with the requirements of the federal. The Commission argues that because the Iowa regulations merely facilitate the state's inspection for compliance with the federal safety standards, and because the additional state-generated environmental preservation and property damage regulations are compatible with these safety standards, there is no conflict between the state and federal permit requirements, and thus no federal preemption.

The Supreme Court recently has held that even where federal law preempts state regulation of certain activities in a given field, state regulation of "distinct activities" in that field is permissible where the state regulation does not conflict with the federal law. Thus, in *California Coastal*, the Court drew a distinction between environmental and land use regulation, and found that state environmental regulation of mining operations on federal land in a state was not preempted by federal land use legislation authorizing the mining operations. 107 S.Ct. at 1427–29. Noting that "[t]he permit requirement itself is not talismanic," the Court held that "if reasonable state environmental regulation is not preempted, [as the Court found it was not] then the use of a permit requirement to impose the state regulation does not create a conflict with federal law where none previously existed." *Id.* at 1429.

Likewise, in *Pacific Gas and Electric*, the Court held that a state permit system imposing a nuclear waste disposal certification requirement on proposed nuclear power plants in California was not preempted by the Atomic Energy Act permit system regulating the construction and operation of such plants. Reasoning that the primary focus of the state statute was economic feasibility, rather than radiological safety, the Court found that the state stat-ute was not preempted by the federal legislation. *Id.* 461 U.S. at 212–16, 103 S.Ct. at 1726–28.

Similarly, in *South Dakota Public Utilities Commission v. Federal Energy Regulatory Commission*, 690 F.2d 674, 678 (8th Cir.1982), we held that the authority of a state public service commission to deny a state permit to construct and operate a nuclear power plant was not preempted by the regulatory authority of the Nuclear Regulatory Commission. We noted that the state "Commission's denial turned on lack of need for the nuclear plant, economic disbenefits, and superiority of alternative means of generation." *Id.* Because we viewed these concerns as distinct from the exclusively federal jurisdiction and concern in the area of radiological safety, we held that the state permit was not preempted. Two years later, in *Cardiff Acquisitions, Inc. v. Hatch*, 751 F.2d 906, 913–16 (8th Cir.1984), we held that the Minnesota Corporate Takeovers Act was not preempted by the Williams Act, 15 U.S.C. §§ 78m(d)-(e) and 78n(d)-(f).

We find in these cases no support for the Commission's argument in the present case. *Cardiff* is plainly inapplicable because the federal statute in that case, far from evincing Congress's intent to preempt state law in the field, contained a specific non-preemption provision which recognized the continuing validity of state securities regulation "insofar as it does not conflict with the provisions" of federal law. *Id.* at 912–13. Moreover, unlike the other cases to which the Commission refers us, the state legislation and permits at issue here are designed to address the same subject matter and activity as is regulated by the federal statute. As the Commission itself held in its order imposing the fines against ANR for violation of the Iowa permit provision, "Iowa Code § 479.5 does not require interstate pipelines to obtain Iowa permits for certification reasons; it requires the permits for safety reasons." App. at 102. This type of regulation explicitly is preempted by the NGPSA, and does not constitute an acceptable dual permit system under *California Coastal* and *Pacific Gas*. As the Supreme Court observed in

*Pacific Gas,* "[i]t would clearly be impermissible for California to attempt to [regulate the construction or operation of a nuclear power plant], for such regulation, even if enacted out of nonsafety concerns, would nevertheless directly conflict with the NRC's exclusive authority over plant construction and operation." 461 U.S. at 212, 103 S.Ct. at 1726. Under the NGPSA, the authority to regulate the safety of construction and operation of interstate gas pipelines is given solely to the Secretary of Transportation, and Iowa is not free to regulate in this area, even if it adopts standards identical to the federal standards. *Natural Gas Pipeline Co.,* 679 F.2d at 54; *Northern Border Pipeline,* 512 F.Supp. at 1265.

■ The Commission's argument that the state provisions merely provide a mechanism for the enforcement of federal law is equally unavailing. The Iowa law specifically allows the Commission to impose safety conditions upon the issuance of a permit. Iowa Code Ann. § 479.12 (West Supp.1987). Thus, even if the Commission applies federal safety standards, the statute gives the Commission the power to interpret those standards, and that power is inconsistent with the exclusive federal authority over interstate safety enforcement. A comprehensive federal regulatory scheme such as the one at work here does not merely preempt state substantive legislation, it also preempts state decisionmaking in that area. *See Maryland v. Louisiana,* 451 U.S. 725, 751, 101 S.Ct. 2114, 2131, 68 L.Ed.2d 576 (1981) (imminent possibility of collision between state and federal adjudication of same issues requires that states refrain from encroaching on federal decisionmaking authority in area of exclusive federal regulation).

The Commission expresses serious concern about the wisdom of allowing pipelines to be constructed and operated without an inspection by an outside enforcement agency prior to the burial and activa-

tion of the pipeline. While we share the Commission's concern, we do not agree that Iowa is free to require a prior safety inspection where the federal regulations do not. In providing for the issuance of a temporary certificate, the NGA vests with FERC the authority to strike a balance between an urgent need for gas service and the need to assure the pipeline company's compliance with applicable law. Under the NGPSA, FERC is directed to accept the company's certification that it is in compliance with the federal safety standards, unless it is informed otherwise by the Secretary of Transportation in the course of its enforcement of the NGPSA standards. 49 U.S.C. § 1676.

The Secretary's regulations regarding inspection, pipeline testing, and compliance with the federal safety standards do not require prior inspection of pipeline construction by an outside enforcement agency. *See* 49 C.F.R. § 190.203(b) (1986). Although the regulations require that pipelines be thoroughly inspected and tested before, during, and after construction, this process appears to involve a significant element of industry self-regulation, subject only to periodic monitoring by the Secretary. *See* 49 C.F.R. §§ 192.13, .305, .307, .501–17 (1986). Iowa is not free to alter the federal safety enforcement scheme by postponing construction of an urgently needed pipeline to allow for its own prior inspection and review of a pipeline's compliance with federal safety standards. *Cf. International Paper Co. v. Ouellette,* —— U.S. ——, 107 S.Ct. 805, 813, 93 L.Ed.2d 883 (1987) (where federal statute strikes a balance between competing interests in a comprehensively regulated area, states are not free to strike a different balance). The preemptive effect of the NGPSA means not merely that Iowa is prevented from establishing its own safety standards, but that it is prevented from supplementing the federal safety enforcement mechanism with its own.[6] *Cf. Campbell v. Hussey,* 368 U.S. 297, 302, 82 S.Ct.

---

**6.** We agree, however, with the observation made by Judge Heaney in his concurring opinion, *post* at 19–20, that the State of Iowa, in its role as the Secretary's agent with the responsibility to inspect interstate transmission facilities for compliance with federal safety standards, properly may require pipeline companies to give a simple notice to the State before the construction of a pipeline begins.

327, 330, 7 L.Ed.2d 299 (1961) (where state regulation is preempted, even regulations intended to complement the federal scheme are preempted). We therefore agree with the District Court that the inspection, hearing, and permit procedure of Chapter 479 is preempted by the NGPSA because it purports to afford the Commission an opportunity to review and place safety conditions upon the construction of interstate gas pipelines. To find preemption in this case, we need look no further than the language of the NGPSA. *See Exxon Corp. v. Hunt,* 475 U.S. 355, 106 S.Ct. 1103, 1109, 89 L.Ed.2d 364 (1986). Based on the express language of the federal statute, state regulatory authority with respect to interstate pipeline safety is preempted, and cannot stand. We therefore affirm the decision of the District Court that Chapter 479 is constitutionally infirm insofar as it attempts to regulate the safety of interstate gas pipelines.

Remaining for our consideration is the impact of this preemption on the nonsafety portions of Chapter 479. The District Court found that the environmental protection and property damage remedy provisions of the Iowa law were not severable from the preempted portions of the statute, and thus could not be saved. Order at 6. The Commission does not challenge this finding directly, but maintains that no severability analysis was necessary, because the entire statute is constitutionally valid. Reply Brief of Appellant at 15. We already have held to the contrary, and thus must reach the severability issue.

■ The severability of the valid portions of a state statute which is otherwise found constitutionally infirm is a matter of state law. *Exxon Corp. v. Eagerton,* 462 U.S. 176, 196–97, 103 S.Ct. 2296, 2308–09, 76 L.Ed.2d 497 (1983). As in the case of any doubtful question of state law, we must give substantial deference to a dis-

trict court's interpretation of the law of the state in which it sits. Although Iowa law appears to favor severability, *see, e.g., Rush v. Sioux City,* 240 N.W.2d 431, 446 (Iowa 1976); Iowa Code Ann. § 4.12 (West Supp.1987), we have no reason to believe that the District Court erred in determining that the environmental and damage remedy provisions of Chapter 479 cannot be severed from the hearing, permit, and inspection provisions, and thus also must fail. Indeed, having carefully studied Chapter 479, we find it difficult to see how any other conclusion could be reached.

This decision does not necessarily preclude Iowa from enacting environmental regulations applicable to interstate pipelines, or from providing remedies for its citizens whose property is damaged during pipeline construction. Although the question is not before us, we note that regulations concerning the environmental impact of pipeline construction are not specifically preempted by the language of either the NGPSA or the NGA. Thus, Iowa may be able to enact legislation to protect its valuable topsoil and other aspects of the environment, and to provide private damage remedies, as long as the state regulations do not conflict with existing federal standards.[7] *See Pacific Gas,* 461 U.S. at 216 n. 28, 103 S.Ct. at 1728 n. 28.

■ Despite its conclusion that federal law preempted most of Chapter 479, the District Court upheld certain sections of the Iowa law imposing an annual inspection fee on all pipelines located within the state. Order at 4–6; *see* Iowa Code Ann. §§ 479.-14–.16, .33 (West Supp.1987). The court observed that the NGPSA authorizes the Secretary of Transportation to appoint state authorities as its agents for insuring compliance with the safety standards, but that the statute authorizes reimbursement of only one-half of the costs incurred in undertaking this agency. Order at 5; *see*

---

7. Indeed, although there are a significant number of federal environmental regulations applicable to gas pipelines under the NGA, *see, e.g.,* 18 C.F.R. §§ 157.14(a)(6–d); 157.206(d); Part 157, Subpart F, Appendix I (1987), certain sections of the regulations appear to anticipate such state regulation, *see, e.g.,* 18 C.F.R. Part 2, Appendix B, ¶¶ 9.2, 9.3 (1987). However, as noted above, the issue is not before us, and we

therefore do not address the question whether the applicable federal environmental regulations constitute such a comprehensive regulatory scheme that they entirely occupy the field of permissible environmental regulation with respect to the construction of underground pipelines. *See Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).

49 U.S.C. § 1674(d). Relying on the Fourth Circuit's decision in *Tenneco, Inc. v. Public Service Commission,* 489 F.2d at 334, the court found that the provisions relating to these inspection fees are not specifically preempted by the NGPSA, but rather, that they further the purpose of the federal statute. Order at 5. Finally, the court concluded that the inspection fee provisions are severable, and therefore survived the invalidation of the rest of Chapter 479. Order at 5–6.

The Commission complains that it makes no sense to invalidate the Chapter 479 permit and inspection system, but to uphold the validity of inspection fees. We disagree. As the Fourth Circuit observed in *Tenneco,* the preemption of state authority with regard to the regulation of safety does not mean that the states are prohibited from "assessing interstate pipelines to defray the expense of conducting safety surveillance as agents of the Secretary." 489 F.2d at 338. While the Commission is not free to mandate safety standards through a state permit system applicable to interstate gas pipeline projects, the Commission is free to charge a reasonable fee for performing the safety inspections that federal law authorizes it to perform. We are persuaded by the reasoning of the Fourth Circuit in *Tenneco,* and by the Department of Transportation's similar interpretation of the permissibility of such assessments under the NGPSA. App. at 134–36. Accordingly, we see no inconsistency between the District Court's upholding of the inspection fee provisions and its striking down on preemption grounds of the rest of Chapter 479.[8]

In conclusion, we agree with the District Court that, with the exception of the inspection fee provisions noted above, the NGPSA preempts Iowa Code Chapter 479. We therefore affirm the order of the District Court.

**8.** The Commission argues that the District Court cannot logically invalidate the Chapter 479 permit program, but leave in place section 479.15, which allows for revocation of a Chapter 479 permit issued to a pipeline company that fails to pay the inspection fee under section 479.14. Reply Brief of Appellant at 10–11. We disagree. Section 479.15 may be a dead letter, but that

HEANEY, Circuit Judge, concurring.

I concur in the result but would make it clear in the opinion that the State of Iowa can require that it be given notice of proposed pipeline construction before that construction begins.

Pipeline safety is essential. It cannot be ensured unless pipelines are inspected during construction. It is in the construction phase that most mistakes that lead to serious or fatal accidents occur.

Neither the Natural Gas Act nor the Natural Gas Pipeline Safety Act gives the Federal Energy Regulatory Commission expressed or implied authority to delegate the vital task of pipeline inspection to the builders or suppliers of a natural gas line. The regulation permitting this self-inspection is, in my view, contrary to congressional intent and must fall.

In any event, the federal agencies have seen fit to delegate the responsibility for pipeline inspections to the State of Iowa. Iowa cannot fulfill its inspection duties unless it is notified in advance that construction is about to take place. Under these circumstances, it would be entirely proper for the State to require the builders of the pipeline to give a simple notice to the State before they proceed with construction so that the State will have an adequate opportunity to inspect. (See District Court Opinion, p. 7). It is only because Iowa requires an elaborate and detailed permit procedure that I agree with the District Court and the majority that its requirements cannot stand in this case.

It follows that I find myself in disagreement with majority in two respects: (1) I believe that a state can enforce a simple notice requirement, and (2) I believe that the Secretary's regulations, 49 C.F.R. §§ 192.13, .305, .307, .501–17 (1986), permitting self regulation in the safety inspection

does not mean that its subject matter must be treated as having been preempted. Iowa is free to amend Section 479.15 (or to take some other legislative approach) to provide an enforcement mechanism with respect to the inspection fee provisions, so long as the mechanism chosen does not conflict with federal law.

process are inconsistent with the NGA and the NGPSA. While the majority's statements to the contrary are unnecessary to the opinion and thus dicta, I feel, nonetheless, compelled to state my disagreement with them.

AFFIRMED.