## Algonquin LNG

v.

**Ramzi J. LOQA, in his capacity as Director of the Department of Inspection and Standards for the City of Providence; and Stephen T. Napolitano, in his capacity as City Treasurer of the City of Providence.**

No. 99–575–T.

United States District Court,
D. Rhode Island.

Jan. 7, 2000.

Henry M. Swan, Davis, Kilmarx, Swan & Kohlenberg, Providence, RI, James M. Behnke, Rich, May, Bilodeau & Flaherty, P.C., Boston, MA, Thomas L. Stanton, Jr., Algonquin Gas Transmission Company, Boston, MA, for Algonquin LNG, Inc., plaintiff.

Kevin F. McHugh, City of Providence, Law Department, Providence, RI, for Ramzi J. Loqa, In his capacity as Director of the Department of Inspection and Standards for the City of Providence, defendant.

### MEMORANDUM OF DECISION

TORRES, Chief Judge.

Algonquin LNG brought this action for a declaratory judgment declaring that the Providence Zoning Ordinance is inapplicable to proposed modifications to a natural gas facility that Algonquin operates in the City of Providence and for an injunction prohibiting the City's building official from requiring that the modifications comply with the provisions of the Ordinance or local building codes.

The issue presented is whether and to what extent the Natural Gas Act, 15 U.S.C. §§ 717 *et seq.* ("NGA"), and the Natural Gas Pipeline Safety Act, 49 U.S.C. §§ 60101 *et seq.* ("NGPSA"), and the regulations promulgated pursuant to those statutes pre-empt local regulation of such projects.

### Procedural History

This case was tried, on an expedited basis, before the Court sitting without a jury; and, due to the urgency of the matter, an immediate bench decision was rendered. This Memorandum of Decision is being issued because the question presented is an important one on which there is a dearth of authority.

### Facts

The facts are relatively simple and undisputed. For approximately 30 years, Al-

gonquin has operated a facility in the City of Providence that is engaged in the interstate transportation and sale of natural gas. Liquid natural gas ("LNG") from outside of Rhode Island is delivered to the facility where it is stored in large tanks. The LNG, then, is converted into a gaseous state and is transmitted through pipelines to customers within and outside of Rhode Island. The customers include a number of public utilities.

Algonquin's facility is located in what the Providence Zoning Ordinance designates as a W–3 zone that is intended primarily for transportation and limited business uses. It is classified as a petroleum refinery, which is a use not permitted in a W–3 zone or any other zone. However, the facility is a valid nonconforming use because it existed before the Providence zoning ordinance was amended to exclude petroleum refineries.

The facility includes vaporizers that convert liquid natural gas ("LNG") to its gaseous state and compressors that compress the gaseous "boil off" from the vaporizers. The gases produced, then, are introduced into the pipeline system for distribution. The proposed modifications consist of replacing the three existing vaporizers with three newer models and building a structure to house the boil-off compressor. The proposed modifications will not increase the quantity of LNG stored at the facility, but will increase, by fifty percent, the rate at which it can be processed and distributed.

As required by the NGA, *see* 15 U.S.C. § 717f(c)(1)(A), Algonquin applied to the Federal Energy Regulatory Commission ("FERC") for a Certificate of Public Convenience and Necessity ("CPCN") authorizing these modifications. The application was published in the Federal Register, and interested parties were given an opportunity to participate in the hearings.

It is not clear whether the City of Providence received specific notice of the application, but it was informed of an environmental assessment that was performed in connection with the application. In any event, the City did not participate in the hearings before FERC, and a CPCN was issued on June 16, 1999.

After receiving the CPCN, Algonquin representatives met with city officials to discuss the proposed construction. Ramzi Loqa, the City's Building Official, stated that the proposed modifications would require a zoning variance and that no building permit would be issued until a zoning variance was obtained.

Algonquin, maintaining that federal law preempts the Providence Zoning Ordinance, proceeded with construction without seeking a variance. The City responded with a cease and desist order and a threat of criminal prosecution if construction continued. Algonquin, then, brought this action.

## Discussion

### I. Preemption Principles

Preemption refers to the displacement of state or local law by federal law on the same subject. The preemption doctrine derives from the Supremacy Clause of the Constitution, which provides that federal laws, Constitutionally enacted, take precedence over state and local laws on the same subject. *See* U.S. Const., Art. VI.

There are three basic types of preemption. The first is what is called express preemption. It occurs when Congress expressly states an intent to preempt state or local law. *See Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988). Express preemption is not at issue in this case because, although the parties agree that the NGPSA specifically preempts state and local regulation with respect to safety standards, *see* 49 U.S.C. § 60104(c), the Act does not refer to zoning ordinances.

The second type of preemption is known as implied preemption. It exists where the intent to preempt reasonably may be inferred either because the scheme of federal regulation is so comprehensive that

there is no room for supplementary state or local regulation or because the field is one in which the federal interest is so dominant that it precludes state regulation on the same subject. *See Schneidewind*, 485 U.S. at 300, 108 S.Ct. 1145.

The third type of preemption is referred to as conflict preemption. It exists when federal regulation does not completely preclude state regulation in a particular field, but the state regulation actually conflicts with federal law. *Id.* Conflict preemption may occur when it is impossible to comply with both the federal and state regulatory schemes. *Id.* It also may occur where the state or local regulation stands as an obstacle to fully achieving the federal objective. *Id.*

## II. Federal Regulation

Since the Algonquin facility is engaged in interstate transportation and sale of natural gas, it is subject to federal regulation under the Commerce Clause. *See* U.S. Const., Art. I, § 8. Congress has exercised its Constitutional authority by enacting the NGA and the NGPSA. These statutes, together with the regulations promulgated pursuant to them, establish a comprehensive scheme of federal regulation that the Supreme Court has said confers upon FERC exclusive jurisdiction over the transportation and sale of natural gas in interstate commerce. *See Schneidewind*, 485 U.S. at 300–01, 108 S.Ct. 1145.

That regulatory scheme governs virtually every aspect of the transportation and sale of natural gas. It includes provisions for determining the price at which natural gas my be sold, whether natural gas facilities may be built or modified, where they may be be located, the methods by which they are constructed, and the safety standards that must be observed. *See, e.g., Schneidewind*, 485 U.S. at 306, 108 S.Ct. 1145 (Michigan cannot regulate rates charged for natural gas); *National Fuel Gas Supply Corp. v. Public Service Commission*, 894 F.2d 571, 579 (2d Cir.1990)

(New York may not engage in site-specific environmental review of facilities); *ANR Pipeline Co. v. Iowa State Commerce Commission*, 828 F.2d 465, 470 (8th Cir. 1987) (Iowa may not impose its own safety standards on facilities); *Northern Border Pipeline Co. v. Jackson County*, 512 F.Supp. 1261, 1263 (D.Minn.1981) (invalidating zoning requirement that pipeline must be buried six feet underground).

For example, the NGPSA requires the gas pipeline facilities to meet minimum safety standards set by the Secretary of the Department of Transportation. *See* 49 U.S.C. §§ 60102–03. In setting those standards, the Secretary is required to consider the location of the facility, including *inter alia* the population and demographics of the surrounding area, existing and proposed land uses near the location, natural physical aspects of the location, and medical, and law enforcement and fire prevention capabilities near that location that could cope with any risk caused by the facility. *Id.* § 60103(a). The safety standards also are required to address the design, construction and testing of such facilities. *Id.* § 60103(b).

■ The regulations require that applicants who seek permission to construct or modify natural gas facilities must submit detailed information describing the existing use of the land on which the facility is or will be located and the land within a quarter-mile radius of the facility. The applicant also must describe the likely impact on land use if the facility is approved. *See* 18 C.F.R. § 380.12(j). A checklist known as Resource Report No. 8 requires that the information provided must include a description of all recreational or scenic areas crossed by the project, and it must identify residences within fifty feet of the proposed construction. *Id.* The regulations also require that such projects be undertaken in a way that avoids or minimizes effects on scenic, historic, wildlife and recreational areas and that landowner concerns be taken into account in deciding

where to locate the facility. *See Id.* § 380.15

Because of the strong federal interest in establishing a uniform system of regulation designed to implement a national policy of ensuring an adequate supply of natural gas at reasonable prices; and, because the federal regulatory scheme comprehensively regulates the location, construction and modification of natural gas facilities, there is no room for local zoning or building code regulations on the same subjects. In short, Congress clearly has manifested an intent to occupy the field and has preempted local zoning ordinances and building codes to the extent that they purport to regulate matters addressed by federal law.

The Providence Zoning Ordinance and building code also are preempted because they directly conflict with the federal regulatory provisions. FERC has determined that the proposed modifications to Algonquin's facility meet all of the requirements under federal law, including those relating to siting and construction standards. On the other hand, the Providence Zoning Ordinance would not. allow the modifications unless Algonquin, first, obtains a use variance from the Providence Zoning Board of Review. However, in order to obtain such a variance, Algonquin would be required to show that, without a variance, it would be deprived of all beneficial uses of its property. *See* R.I.Gen.Laws § 45–24–41(D); Providence Zoning Code, § 904.2. Since Algonquin currently is operating a natural gas facility at the site, such a showing would be impossible.

The City argues that Section 302 of the zoning ordinance may provide a basis for obtaining a variance. That section provides that: "[t]his ordinance shall not be construed so as to eliminate or interfere with the construction, installation, operation and maintenance for public utility purposes of water and gas pipes." Providence Zoning Code, § 302. Even assuming, *arguendo*, that this provision applies to facilities like Algonquin's, it does not purport to

exempt such facilities from complying with use regulations or other requirements of the ordinance. Indeed, the City, itself, maintains that Algonquin would be violating the ordinance unless it obtains a variance.

In short, federal and state law conflict as to whether Algonquin should be allowed to proceed with the project. Although the project satisfies all applicable federal requirements, it does not and cannot satisfy the requirements of the Providence Zoning Ordinance. Accordingly, subjecting the project to regulation under the ordinance would be tantamount to conferring on the City the power to review and nullify FERC's decision regarding the modification of a facility used in the interstate transportation and sale of natural gas. The inevitable result would be to delay or prevent completion of the project, thereby presenting an obstacle to accomplishing the important federal purpose of ensuring that adequate and affordable natural gas is provided to home owners and businesses. Therefore, the ordinance and any licensing requirements contingent upon compliance with it are preempted be federal law.

Of course, this does not mean that local interests are or can be ignored by federal regulatory authorities. On the contrary, the NGPSA requires that appropriate state officials be provided with notice of an application for a CPCN and an opportunity to comment on the application. *See* 49 U.S.C., § 60112(c). The statute further provides that state comment shall incorporate comments of affected local officials. *See id.* Moreover, FERC's regulations require that notice of applications for CPCNs be published in the Federal Register and that all interested parties may petition to intervene. *See* 18 C.F.R. § 157.9.

In addition, any party aggrieved by a FERC decision may seek reconsideration, pursuant to 15 U.S.C. § 717r(a), or appeal to a United States Court of Appeals, pursuant to 15 U.S.C. § 717r(b).

Finally, it should be noted that interstate gas facilities are not entirely insu-

lated from local regulation. State and local laws that have only an indirect effect on interstate gas facilities are not preempted. *See Schneidewind,* 485 U.S. at 308, 108 S.Ct. 1145; *ANR Pipeline,* 828 F.2d at 474. Moreover, local regulation with respect to matters or activities that are separate and distinct from subjects of federal regulation may be permissible if they do not impede or prevent the accomplishment of a legitimate federal objective.

In this case, the ordinances and codes at issue are not peripheral regulations that have only an indirect effect on Algonquin's proposed project. Rather, they seek to regulate aspects of the project that are regulated, expressly, by federal law and that Congress intended to be regulated by FERC, alone. In addition, they conflict with the federal regulatory scheme and thus interfere with the accomplishment of important federal objectives.

### Conclusion

For all the foregoing reasons, it is hereby ordered that judgment be entered in favor of the Plaintiff as follows:

1. It is hereby declared that any provisions of the Providence Zoning Ordinance, any building or other codes administered by the City of Providence, and any licensing or certification requirements that are contingent upon approval pursuant to them are preempted insofar as they purport to apply to the FERC-approved modifications to Algonquin's natural gas facility.

2. The defendants, their agents, and all persons acting in concert with them are hereby enjoined from interfering with the aforesaid modifications or with the operation of the facility that is the subject of this action to the extent that such modification and/or operation have been approved by FERC.

IT IS SO ORDERED.